FERGUSON AND CRENSHAW *v.* STATE

[No. 396, September Term, 1963.]

150

*Decided July 27, 1964.*

The cause was argued before HENDERSON, HAMMOND, MARBURY and SYBERT, JJ., and ANDERSON, J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Milton B. Allen* and *Richard K. Jacobsen* for appellants.

*Robert J. Martineau, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *William T. S. Bricker, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

ANDERSON, J., by special assignment, delivered the opinion of the Court.

The appellants, James Crenshaw and Freddie Oscar Ferguson, were tried and convicted in the Criminal Court of Balti-

more upon separate indictments charging each with the crime of lottery. The appellants were tried jointly before the Court, without a jury, and each was found guilty on the fifth count of each indictment charging lottery paraphernalia in possession, and sentenced to one year in the Maryland House of Correction and a fine of $1,000 each; House of Correction sentence suspended upon payment of fine and costs. From the conviction and sentence each has appealed.

While both appeals are primarily based upon illegal search and seizure, their respective contentions are upon different grounds. Crenshaw's principal contention is that a search warrant authorizing a search of the premises known as 1301 E. Baltimore Street did not authorize the search of three adjoining buildings constituting one business establishment known as Central Battery Service, the principal address of which is 1301 E. Baltimore Street, and that the evidence of lottery therein obtained was illegally used against him. He also contends that there was a conflict in the evidence with respect to the articles found upon him, and, therefore, the court erred in failing to resolve this in his favor. Ferguson's principal contention is that the search and seizure of lottery materials from his automobile was illegal, as was his arrest, since the police had no warrant to search the automobile or the property upon which the automobile was located, and that there was no misdemeanor committed in the presence of the police officers.

The search warrant was issued by Judge Sodaro on November 28, 1962, upon the affidavit of Officer Andrew Vrablic of the Baltimore City Police Department as to certain observations made by him on November 23, 26, and 27, 1962, when he observed a number of persons engaged in lottery activities at Central Battery Service, 1301 E. Baltimore Street. It commanded him with the necessary and proper assistants: (1) to enter and search the premises known as 1301 E. Baltimore Street, in the City of Baltimore; (2) to search the person and clothing of persons named or described in the warrant; (3) to search all other persons who may be participating in said criminal activities; and seize all paraphernalia used in or incident to the operation of said criminal activities, and seize any evidence that pertains to said criminal activities.

The search was made on November 29, 1962. Sergeant Green and Officer Vrablic, accompanied by other officers of the Police Department, went to premises known as 1301 E. Baltimore Street, that being the official address of the Central Battery Service. The Central Battery Service is a tire, battery and repair shop located at the corner of E. Baltimore Street and South Central Avenue. It consists of several adjoining buildings in which the Central Battery Service is carried on. All of these buildings are owned by the same person, and are operated as part of the Central Battery Service. The formal address of Central Battery Service is 1301 E. Baltimore Street, although the buildings to the rear that face on S. Central Avenue are numbered 3, 5 and 7 S. Central Avenue. These buildings are the battery shop and the repair shop. All the buildings are joined with the exception of a small alleyway, left open because of fire regulations, between the battery shop and the repair shop. However, this is closed in by a partition at the top and a door beneath which is kept closed. The buildings are painted white and blue, and carry legends indicating they are the "Central Battery Service."

Upon arrival on the premises, the officers went to the rear of 1301 E. Baltimore Street where the repair shop or garage and battery shop are located. There they arrested the appellant, James Crenshaw, the first person described in the warrant, and searched him and the surrounding premises. Upon searching Crenshaw, they found two lottery code cards, 14 non-conventional lottery slips, containing 139 numbers and $36 in play. In searching the surrounding premises, they found a large number of lottery cards, slips, and money, the majority of which were found in the repair shop or garage and some in the battery shop. After searching Crenshaw, Officer Vrablic left the premises and took a position outside at E. Baltimore Street and S. Central Avenue. While there he saw the appellant Ferguson, described in the warrant as the person driving a Ford automobile, arriving in a 1950 Pontiac. Ferguson was observed getting out of the car, taking a paper bag from a man who walked over to him, putting the bag in the car and locking it. He then was seen walking towards the garage. Vrablic, after signalling to Green that Ferguson was approaching, looked in the car and

observed evidence of lottery on the front seat. Meanwhile, Ferguson arrived at the garage or repair shop where Crenshaw was in custody. He walked over to Crenshaw and said "what's up," to which Crenshaw replied "the man is here"; whereupon, Green identified himself to Ferguson, showed him the warrant and upon searching him found $57.25 in currency in his pocket. Officer Vrablic then entered the garage or repair shop and told Sergeant Green that the automobile was parked across the street on a vacant lot in the 1300 block of E. Baltimore Street, and informed him as to what he had seen in the automobile. Green then left the garage and went to the automobile where he observed lottery slips lying in the front seat. The Crime Laboratory was called, and photographs of the inside of the automobile were taken before it was unlocked. While waiting for the Crime Laboratory personnel to arrive, the keys of the car were obtained from Ferguson, and after the photographs were taken the car was unlocked and searched. The search revealed evidence of lottery in the form of lottery slips, adding machine lottery tapes representing lottery stations and other evidence of lottery. A total amount of eight lottery tapes was taken from the automobile, representing eighty lottery stations, and showing $4,108.44 in play, along with 175 non-conventional lottery slips, representing $1,473.86 in play.

The automobile operated by Ferguson was parked on a vacant lot on the northwest corner of E. Baltimore Street and South Eden Street, about a block from 1301 E. Baltimore Street. The lot is owned by Monumental Iron and Metal Company.

The appellant Crenshaw contends that the search warrant authorizing a search of "The premises known as 1301 E. Baltimore Street" did not authorize a search of three adjoining buildings, being number 3, 5 and 7 S. Central Avenue. He admits that the Central Battery Service consists of the main building located at 1301 E. Baltimore Street, a battery shop and a repair shop or garage, in which there is a storage room, which carry the numbers 3, 5 and 7 S. Central Avenue, and that all make up one business establishment under one ownership, but argues that since they have different addresses they must be treated as and considered to be separate and distinct locations.

This he claims is supported by the fact that numbers 5 and 7 S. Central Avenue are separated from 1301 E. Baltimore Street by an alley; that there is no doorway between 1301 E. Baltimore Street and numbers 5 and 7 S. Central Avenue; that separate tax bills were received for 5 and 7 South Central Avenue, and that 1301 E. Baltimore Street is in Postal Zone No. 31, whereas 5 and 7 S. Central Avenue are in Postal Zone No. 2.

The issue of search warrants is governed by Article 26 of the Maryland Declaration of Rights, which declares: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

The Maryland search warrant statute contains a proviso "that any such search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be searched." Article 27, Section 551, Code (1957).

In *Saunders v. State*, 199 Md. 568, 572, 87 A. 2d 618, this Court stated: "The constitutional and statutory provisions demand that a search warrant shall contain a description of the premises to be searched definite enough to prevent any unauthorized and unnecessary invasion of the rights of privacy. It is an accepted rule that a description in a search warrant of the place to be searched is sufficient if it enables the officer with the warrant to locate the place with certainty .* * * Ordinarily the description in a warrant of a house to be searched is sufficiently definite if it correctly states the street number of the house. *Steele v. United States, 267* U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757."

In this case the warrant described the place to be searched as "the premises known as 1301 E. Baltimore Street, in the City of Baltimore." As previously stated, the premises consist of the main building, a battery shop and a garage or repair shop in which there is a storage room. It is all one business, owned and operated by one owner. The buildings are all one

color (white except the main building which is white and blue) and are all adjacent one to the other save for the small alleyway between the battery shop and the repair shop and even this is enclosed with a doorway providing an exit. One has only to look at the photograph of the premises to see that they are one and the same business establishment. Furthermore, the observations of Officer Vrablic as set forth in the search warrant itself relate to what he saw in and around the entrance to "the repair shop which is located on the first floor of the above described premises." Central Battery Service lists its address as 1301 E. Baltimore Street, even though it encompasses a larger area than the specific piece of property with that address. The appellants concede that all of the property searched consisted of the business establishment of Central Battery Service and no other property was searched. The trial court found that "the evidence clearly shows this is one business operation with signs on the building at 1301 as substantially the same business as being conducted in the other structures in the rear," * * * and "the description in the warrant is sufficient to authorize a search of the entire premises despite what the land records show is the ownership of the property." In *Allen v. State,* 178 Md. 269, 278, 13 A. 2d 352, the Court stated: "The fact that no formula may be stated with reference to the test of what premises may be searched, and how the premises must be described, is shown by the cases collected in 3 A. L. R. 1518, 1519; 13 A. L. R. 1318, 1319; 27 A. L. R. 751-753; 39 A. L. R. 841; *Cruze v. State,* 114 Tex. Cr. R. 450, 25 S. W. 2nd 875; 68 A. L. R. 1186-1191. Every case will depend upon its particular facts and circumstances."

We hold that the search warrant authorizing a search of "the premises known as 1301 E. Baltimore Street" authorized a search of the adjoining buildings constituting one business establishment operated as the Central Battery Service and that the search was proper.

The appellant Crenshaw further contends there was a conflict in the evidence presented with respect to the articles found on him, and that the court was in error in failing to resolve this in his favor. Sergeant Green testified that Crenshaw was searched and upon him were found two lottery code cards, 14

non-conventional lottery slips containing 139 numbers and $36 in play. He was substantially supported in his testimony by Officer Vrablic. The articles were identified by him at the trial and were admitted as State's Exhibit No. 2. However, the marking on the envelope in which the evidence was kept after it was taken from Crenshaw was "taken from cabinet in bathroom rear of garage." Both officers testified that they did not make the markings on the envelope and they did not know who did. Sergeant Green was positive in his identification of the articles taken from the defendant. We find no merit in the appellant's contention. It is the function of the trial court when sitting without a jury to resolve conflicts in the evidence, and this Court will interfere only when the ruling of the lower court is clearly erroneous. Maryland Rule 886.

The appellant Ferguson contends that no misdemeanor was committed in the presence of the police officers by him to justify the search of his automobile, the seizure of the evidence therein, and his arrest. We find no merit in this contention. Officer Vrablic, who had been stationed as a lookout following the arrest of Crenshaw, observed Ferguson driving down the street. He saw him park his car, and, as he started to close the door, a man walked over to him and handed him a brown paper bag. Ferguson locked the car and walked towards the garage in the rear of 1301 E. Baltimore Street. The officer looked in the car and observed evidence of lottery on the front seat. He then returned to the garage where Ferguson had already been arrested under the search warrant and searched. When Officer Vrablic entered the garage he told Sergeant Green that Ferguson's car was parked on a vacant lot in the 1300 block of E. Baltimore Street and that there was evidence of lottery in the automobile. Green than went over to the automobile, looked in the window and saw lottery slips lying on the front seat. The crime laboratory was called, photographs were taken through the windows of the automobile, the keys were obtained from Ferguson, and the automobile was searched and inside were found a total amount of eight lottery tapes, representing eighty lottery stations, and showing $4,108.44 in play, along with 175 non-conventional lottery slips containing 2,976 lottery numbers representing $1,473.86 in play. The articles found were marked State's Exhibit No. 8 and were admitted in evidence.

The appellant Ferguson argues that he was not described in the warrant and was not subject to arrest, detention or search on that score. In this the trial court agreed with him and did not admit in evidence against Ferguson the money taken from him, nor the articles seized on the premises. However, the trial court found that there was a misdemeanor committed in the officers' presence and that the search of the automobile was lawful and in this we agree. *Rucker v. State,* 196 Md. 334, 76 A. 2d 572, and cases therein cited. See also *Moore v. State,* 199 Md. 676, 87 A. 2d 577.

The appellant Ferguson relies upon *Robinson v. State,* 229 Md. 503, 184 A. 2d 814, where the arrest and search were held illegal. The case is clearly distinguishable from the instant case because there the lottery tickets and other paraphernalia were in the glove compartment of the car and were not visible to the officers making the arrest before the search of the automobile, and, therefore, the evidence was insufficient to show the commission of a misdemeanor in the presence of the officers. Here the officers saw evidence of lottery inside the automobile almost immediately after the appellant left the automobile and before the search. It is well settled in this State that a peace officer may arrest without warrant a person who commits a misdemeanor in his presence. *Wanzer v. State,* 202 Md. 601, 609, 97 A. 2d 914; *Davids v. State,* 208 Md. 377, 118 A. 2d 636; and *Childress v. State,* 227 Md. 41, 175 A. 2d 18.

The appellant Ferguson further contends that the officers did not have a search warrant to search the automobile or the lot upon which it was parked or permission from the owners to enter upon the lot and they were trespassers, and, therefore, the evidence discovered in the automobile was inadmissible against him. The testimony is clear that the parking lot used by Ferguson and on which the officers went to look into Ferguson's car was open to anyone who wanted to use the lot, and since Ferguson was not among those who are considered to be in lawful possession of the property, he could not object to the officers' presence on the parking lot. The officers when they entered upon the lot were no more trespassers than Ferguson himself. Furthermore, Ferguson had no right to complain since he was not among those who are considered in law-

ful possession of the property and cannot properly object to the officers' presence on the parking lot. *Baum v. State,* 163 Md. 153, 161 A. 244; *Kapler v. State,* 194 Md. 580, 71 A. 2d 860. Lawful occupation was interpreted in *Lambert v. State,* 196 Md. 57, 75 A. 2d 327. We find that appellant's contention in this regard is without merit.

Finally, appellants contend that the evidence of the police officers could have no weight since none of the officers testifying qualified as experts concerning lottery. This contention is without merit. No objection was made to the identification of the evidence introduced as lottery slips. There is no dispute as to the fact that the papers and slips introduced in evidence were lottery material and the appellants concede them to be such. The officers testifying, and in particular Sergeant Green, were experienced police officers who had no difficulty identifying the articles found as lottery materials.

*Judgments affirmed, with costs.*