CROWE AND WILLISTON *v.* STATE

[No. 408, September Term, 1964.]

*Decided October 12, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*Richard K. Jacobsen* for *Lacey Wayne Crowe,* one of appellants and *Alan M. Wolf* for *James R. Williston,* other appellant.

*Franklin Goldstein, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Richard O. Motsay, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

On May 29, 1964, both appellants were tried in the Criminal Court of Baltimore, before Judge J. Harold Grady, without a jury, under pleas of not guilty to various charges. The ap-

pellant Lacey Wayne Crowe, was found guilty of receiving stolen goods of the value of $72, and of escape from the Maryland House of Correction. The appellant James R. Williston, was found guilty of breaking the storehouse of Catherine Beard with intent to take goods of a value in excess of $100 (first count); breaking said storehouse and taking goods of a value in excess of $5 (third count); and larceny of $72 (fifth count). Crowe was sentenced to three years in the Maryland House of Correction for receiving stolen goods and was sentenced to one year in the Maryland House of Correction for escape, with both sentences to run concurrently after completion of the sentence he was then serving. Williston was sentenced to three years in the Maryland Correctional Institution on each count of breaking with intent to steal goods of a value in excess of $100 and the breaking and stealing goods of a value in excess of $5. He was also sentenced to eighteen months in the Maryland Correctional Institution for larceny. All three sentences were to be concurrent and to date from April 11, 1964. Crowe has appealed only from the judgment and sentence with respect to receiving stolen property, and Williston has appealed generally.

At about 3:00 a.m. on the morning of April 11, 1964, Sergeant Holland, accompanied by several other members of the Baltimore police force, proceeded to 1939 Hollins Street, which was the residence of a Mr. Taylor, step-father of Williston, where they had information Lacey Wayne Crowe, an escapee from the Maryland House of Correction, was hiding. The police officers, who had a warrant for the arrest of Crowe, were permitted by Mr. Taylor to enter the house. He told the police that he did not know whether Crowe was in the home but granted permission to the police to conduct a search. As the search of the house began, Sergeant Holland encountered the appellant Williston in the dining room. While Holland questioned Williston, the other officers resumed their search of the premises for the escapee. Williston admitted that he knew Crowe and when asked if he had seen him or if he had been in the house Williston replied that he had not seen Crowe and that Crowe had not been there. Immediately thereafter one of the other officers announced the discovery of Crowe in the base-

ment. Officer Holland and Williston went to the basement where, in the presence of Crowe, Williston stated that he had not known that Crowe was an escapee but though he was out on parole. At this point the officers observed in plain view, and within approximately ten feet of the place where Crowe had been discovered, a brown paper bag beside which were two piles of coins. Inside the brown paper bag the police found a Catholic miraculous medal. Mr. Taylor told Sergeant Holland that neither the money nor the bag was in the basement when he went to bed at 11:30 p.m. the previous evening. Crowe and Williston both denied ownership or knowledge of whence the money, etc., had come. Crowe and Williston were thereupon arrested and taken to a police station where they were placed in a cellblock.

After being in custody approximately three hours, according to the testimony of Sergeant Holland, Williston sent for him and indicated that he would like to tell exactly what happened, have it reduced to writing, and sign it. He then gave an oral statement to Sergeant Holland in which he indicated that he and Crowe went to Dubner's Restaurant (of which Catherine Beard was the proprietress) at approximately 2:30 a.m., and that he acted as a look-out while Crowe used a screwdriver to open a screen and enter the building. According to the statement, Crowe remained in the building approximately ten minutes and came out with pockets bulging. Crowe and Williston then went back to the Hollins Street address and went to the basement to divide the money, which they were doing when the officers came to the front door. At the trial, Williston testified that Sergeant Holland, during the questioning in the Sergeants' room of the police station, kicked him off his chair, as the result of which he cut his lip, threatened him, and also threatened to arrest his parents. Sergeant Holland testified that neither he nor anyone in his presence, had used any force, violence, threats, promises or inducements in order to obtain the statement. Upon cross-examination by counsel for Williston, Sergeant Holland denied that he had ever threatened to arrest Williston's parents, that anyone kicked Williston or his chair, that Williston had a bleeding lip, that anyone threatened to shove a flashlight down Williston's throat, or that any threats were made to Williston

of any nature. Officer Leo Barclay testified that he was present during part of the time that Williston was interrogated and that no one threatened, kicked or used any force, threats or violence, or offered any immunities or inducements in order to obtain the statement. Officer Roland Campbell specifically denied that any of the occurrences as claimed by Williston occurred in his presence.

Sergeant Holland returned to the stand and testified that when Williston called for him and told him orally about the breaking into of Dubner's it was the first time he knew Dubner's had been burglarized. He further testified that after Williston told him how they got in, he went to Dubner's and made an examination of the premises, and found out from the operator of the restaurant, Mrs. Beard, that the cigarette machine, the juke box, and the cash register had been broken into. After he came back from Dubner's he talked to Williston again briefly, and, since he had been up approximately forty-eight hours, he went home. The following evening, at 8:45 p.m., a written statement was taken and was thereafter signed by Williston. After hearing testimony on both sides as to the voluntariness of the oral statement, the trial judge ruled that it was voluntary and admitted it as to Williston only. The written statement was not introduced into evidence.

At the trial, the proprietress of Dubner's Restaurant, Mrs. Beard, testified that the restaurant had been broken into on the morning of April 11, and that a total of about $72 had been taken. In addition to the money, a miraculous medal which was kept in the juke box was missing. She identified the medal found in the Taylor basement as the one missing from the juke box. The attorney for Crowe (not his counsel on appeal) did not object to Sergeant Holland's testimony about the brown paper bag and the piles of coins, nor did he object to their introduction into evidence. He did object to the introduction into evidence of the miraculous medal, but only on the ground that Mrs. Beard did not at first mention the medal as one of the items having been taken. The attorney for Williston objected when Sergeant Holland started to testify about the brown paper bag and the pile of coins, but did not object when any of the items were offered into evidence.

The attorney for Crowe moved for a judgment of acquittal at the conclusion of the State's case and at that point also moved to exclude the tangible evidence on the ground that it was illegally seized. The trial judge refused to exclude the evidence since he found that the officers had a warrant for the arrest of Crowe, and had permission from Mr. Taylor to enter the premises. The court further pointed out that at the time the police observed Crowe, for whom they had the warrant, they also observed the money in his immediate presence without any additional search. He did grant Crowe's motion for judgment of acquittal as to all counts of the indictment with regard to burglary and larceny, but denied it as to the count for receiving stolen property. The court denied Williston's motion for judgment of acquittal. Williston voluntarily chose to take the stand to testify in his own behalf. Crowe, after being advised of his rights, decided not to testify.

On these two separate appeals Williston contends that his oral confession was inadmissible for three reasons: (1) his statement was the product of force and coercion, and therefore involuntary; (2) he was not advised as to his right to have counsel appointed for him before the statement was taken; and (3) his arrest was illegal. Both appellants raise the point that the coins and the religious medal were inadmissible because their discovery was the product of an illegal search and seizure. Additionally, Crowe claims there was insufficient evidence to convict him of receiving stolen goods.

We find no merit in Williston's first contention that the confession was a product of coercion and was thus inadmissible against him. The trial judge heard the testimony of Williston, Sergeant Holland, and of the other officers who testified, as to the voluntariness of the statement. He was in the best position to judge the credibility of the witnesses. It was uncontroverted that Williston lied to Sergeant Holland when he was first asked if Crowe was in the Taylor home. This certainly could have been a strong factor in the judge's determination of Williston's credibility. On numerous occasions this Court has held that where the trial judge sits without a jury, his determination as to whether a statement is freely and voluntarily given will not be disturbed on appeal in the absence of a showing of abuse of

discretion. *Oakley, Etc. v. State,* 238 Md. 48, 207 A. 2d 472; *Abbott v. State,* 231 Md. 462, 190 A. 2d 797; *Bryant v. State,* 229 Md. 531, 185 A. 2d 190. *Cf.* Md. Rule 886 a. We find no such abuse of discretion in the instant case. The court was clearly justified in its determination that the State had met its burden of proof as to the voluntariness of the statement by introducing "believable, persuasive contradiction" of each claim of threat or coercion. *Mefford and Blackburn v. State,* 235 Md. 497, 201 A. 2d 824; *Oakley, Etc. v. State, supra.*

Equally without merit is Williston's next contention, which is based on the fact that he was not advised of his right to have an attorney appointed for him until after his oral statement had been taken. There is nothing in the record before us to indicate whether or not he was so informed. Appellant's position appears to be that any confession is inadmissible if a defendant is without counsel prior to the time a statement is obtained. Even assuming that this point has been properly preserved for appeal, this position is patently untenable. Nowhere in the brief or in the record before us is there any indication that Williston ever requested to be allowed to consult counsel. This Court has repeatedly held that where there is no evidence that a request for a lawyer is made, the landmark case of *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, does not control, and if the confession is voluntary it may be admitted into evidence. *Johnson v. State,* 238 Md. 140, 207 A. 2d 643; *Swartz v. State,* 237 Md. 263, 265, 205 A. 2d 803; *Anderson v. State,* 237 Md. 45, 205 A. 2d 281; *Mefford and Blackburn v. State, supra; Green v. State,* 236 Md. 334, 203 A. 2d 870.

Williston thirdly claimed that the confession was the product of an illegal arrest and was thus inadmissible under the doctrine of *Wong Sun v. United States,* 371 U. S. 471, 9 L. Ed. 2d 441. However, it is not necessary that this Court find that the arrest was lawful in order to sustain the admission into evidence of his confession. We have held that the doctrine of *Wong Sun* was not intended to, and does not, control prosecutions in state courts and that if the confession is voluntary, it is immaterial that the arrest was illegal. *Mefford and Blackburn v. State, supra,* pp. 511-12 of 235 Md., and cases cited. Moreover, be-

fore the officers found Crowe, Williston admitted he knew Crowe but denied his presence in the house. Therefore, the officers had every reason to believe that Williston was in the process of aiding and assisting Crowe in his escape and in his attempt to avoid recapture, a misdemeanor, in violation of Code (1957, 1964 Cum. Supp.), Article 27, Section 139, committed in his presence.

Williston and Crowe both contended that it was reversible error for the trial court to admit into evidence the two piles of coins and the miraculous medal because the search of the Taylor home was unreasonable. This contention must be rejected because the police had every right to arrest Crowe, pursuant to a valid arrest warrant, and in the course of arrest to search the person arrested and his immediate surroundings. *Knotts v. State,* 237 Md. 417, 421, 207 A. 2d 100 (misdemeanor in presence); *Davis v. State,* 236 Md. 389, 204 A. 2d 76 (probable cause in a felony case); *Ferguson v. State,* 236 Md. 148, 156-57, 202 A. 2d 758 (misdemeanor in presence); *Braxton v. State,* 234 Md. 1, 6, 197 A. 2d 841 (misdemeanor in presence). Crowe's position is that the goods which were seized in such a search of the immediate surroundings must either relate to the crime being investigated or must be the kind of articles the possession of which constitutes a crime. The mere fact that what the police find in a valid search relates not to an offense for which a person is being arrested does not vitiate the seizure. *Knotts v. State, supra; Swartz v. State, supra; Cannon v. State,* 235 Md. 133, 137, 200 A. 2d 919; *Braxton v. State, supra.* In the case of *Jenkins v. State,* 232 Md. 529, 194 A. 2d 618, the items seized were both unconnected with the offense for which the defendant was arrested and not the type of goods the mere possession of which would be illegal. On the record before us the trial court was correct in admitting into evidence the items seized.

We find no merit in Crowe's contention that the evidence was insufficient to justify his being found guilty of receiving stolen goods. Although the State conceded that the statement of Williston was not admitted into evidence against Crowe, nevertheless under the case law of this State the evidence was more than sufficient to support the trial judge's finding that

Crowe was guilty of receiving stolen property. *McCray v. State,* 236 Md. 9, 202 A. 2d 320; *Brooks v. State,* 235 Md. 23, 31-32, 200 A. 2d 177; *Brown v. State,* 232 Md. 162, 192 A. 2d 110; *Jordan v. State,* 219 Md. 36, 148 A. 2d 292. The uncontradicted evidence that Crowe, an escapee from the Maryland House of Correction, was hiding in the basement in the home of an acquaintance, in close proximity to the money and that no one testified that the money was already there when he entered the basement, or that someone else brought the money into the basement while he was there, enabled the trial court to draw the inference that he was in actual possession of the recently stolen money. The fact that the money was beside the paper bag and not inside the paper bag, and was divided into two piles, permitted the inference that the money had very recently been in the process of being counted for the purpose of division even without the utilization of Williston's oral statement which confirmed this fact.

The trial court in applying the doctrine recognized in *McCray v. State, Brown v. State,* and *Jordan v. State,* all *supra,* gave Crowe the benefit of any doubt the court might have had as to his breaking and entering Dubner's and, therefore, granted the motion for judgment of acquittal as to the more serious counts of the indictment and found him guilty of the lesser charge of receiving stolen property.

Williston was charged with breaking and stealing certain property *and* with the larceny of the same property in separate counts, and has appealed generally, as noted above. We think he should not have been convicted and given separate sentences for *breaking and stealing* under count three, as well as for *larceny* under count five, in a case such as this where the larceny consists of the same act as the stealing charged in the third count. The imposition of sentence for breaking and stealing made the sentence imposed for larceny improper. *Tucker v. State,* 237 Md. 422, 206 A. 2d 691; *Fabian v. State,* 235 Md. 306, 313-14, 201 A. 2d 511; *Young v. State,* 220 Md. 95, 101, 151 A. 2d 140. For that reason we will reverse the judgment as to Williston on the fifth count, although the length of the sen-

tence is not affected, but affirm it as to the first and third counts; and as to Crowe the judgment will be affirmed.

*Judgment as to Crowe affirmed.*
*Judgment as to Williston on the*
*first and third counts affirmed,*
*and on the fifth count reversed.*