51 A.3d 42

**PRINCE GEORGE'S COUNTY, Maryland et al.**

v.

**Roguell BLUE.**

**No. 191, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Aug. 30, 2012.

---

Shelley L. Johnson (M. Andree Green, Acting Co. Atty., William A. Snoddy, Deputy Co. Atty., on the brief), Upper Marlboro, MD, for Appellant.

Jeanett P. Henry, Silver Spring, MD, for Appellee.

Panel: ZARNOCH, BERGER and JAMES R. EYLER, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

## STATEMENT OF THE CASE

Appellee/cross-appellant, Roguell Blue ("Blue"), filed suit against appellants/cross-appellees, Prince George's County, and police officers Steve Thompson ("Thompson"), Charles Patterson ("Patterson"), and Timothy Tyler ("Tyler") (collectively, "the County") for a violation of his civil rights under Article 24 of the Maryland Declaration of Rights, false arrest/imprisonment, and malicious prosecution stemming from his allegedly wrongful arrest for wearing and carrying a handgun without a permit outside Irving's Nightclub in Capitol Heights. In December 2010, the Circuit Court for Prince George's County granted the County's motion for judgment on the malicious prosecution claim, but allowed the remaining counts to be considered by a jury, which found the County liable. Compensatory damages were awarded in the amount of $106,100.00. After the court denied the County's Motion for Judgment Notwithstanding the Verdict ("JNOV"), both parties appealed.

The County poses the following questions:

1. Did the trial court err when it denied the Motion Notwithstanding the Verdict on the issue of the existence of probable cause?

2. Did the trial court abuse its discretion when it permitted the treating psychiatrist to be qualified as an expert witness and testify as to expert opinions not contained in any report?

Blue raises an additional issue:

Did the trial court err in directing a verdict on Blue's malicious prosecution claim on the basis that there was no showing of malice?

In answering the first question in the affirmative, we conclude that, under the circumstances of this case, Md.Code (2002, 2012 Repl.Vol.) Criminal Law Article ("Crim.Law") § 4–203(b)(7) [1], which exempts certain supervisory employees from the statute's general prohibition against wearing, carrying, or transporting a handgun without a permit, see Crim. Law § 4–203(a),[2] does not apply to employees working outside the building that houses the nightclub. Because Blue was wearing a handgun outside the premises and failed to produce a permit to wear, carry, or transport a handgun [3], the County

---

**1.** Section 4–203(b) enumerates several exceptions to the prohibition—most significantly § 4–203(b)(7), which exempts a supervisory employee who wears, carries, or transports a handgun:

 (i) in the course of employment;
 (ii) *within the confines of the business establishment* in which the supervisory employee is employed; and
 (iii) when so authorized by the owner or manager of the business establishment. . . .

(Emphasis added).

**2.** Section 4–203(a)(1) generally prohibits wearing, carrying, or transporting a handgun:

 Except as provided in subsection (b) of this section, a person may not:
 (i) wear, carry, or transport a handgun, whether concealed or open, on or about the person; or
 (ii) wear, carry, or knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State. . . .

**3.** The handgun control law does not apply when a permit has been obtained for:

 [T]he wearing, carrying, or transporting of a handgun by a person to whom a permit to wear, carry, or transport the handgun has been

had probable cause to arrest and charge him with violating Crim. Law § 4–203(a)(1). In the absence of this vital element of his claims, Blue cannot prevail in his constitutional or common law actions. Because we must reverse the judgment, there is no need to address the County's second contention. As to Blue's cross-appeal, we find that the circuit court did not err in rejecting his malicious prosecution claim.

## FACTUAL AND LEGAL PROCEEDINGS

On June 17, 2008, during an investigation into a possible shooting at Irving's Nightclub in Capitol Heights, County police officers Patterson, Tyler and Thompson discovered that Blue was standing in the parking lot of the nightclub, wearing a handgun without a permit, and had neither a certification nor a license to be a security guard. When questioned, Blue identified himself as the nightclub's "head of security," and produced a card which identified him as a "special agent" of the "United States Fugitive Enforcement Agency," a company that he formed and owned. He also provided the officers with several weapons certifications and a laminated copy of a "portion of the Maryland Handgun Law" which he believed exempted him from the State's handgun permit requirement.

It was Officer Tyler's belief that Blue was required to have been in possession of both a security guard permit and weapons permit to lawfully carry a handgun as an armed security guard in the parking lot of a business. Lacking this documentation, Blue was arrested and charged with "wearing, carrying, or transporting a handgun in public, whether concealed or open" without a permit, in violation of Crim. Law § 4–203. Officer Thompson's sworn Statement of Probable Cause provided:

> [Blue], head of security for Irving's Night Club, was in possession of a Black Sig Sauer p229 Caliber. At this time [Patterson] ... asked [Blue] to display his credentials and

---

issued under [Md.Code (2003, 2011 Repl.Vol.), §§ 5–301–5–314 of the Public Safety Article].
Crim. Law § 4–203(b)(2).

handgun permit to carry on the property. At this time [Blue] started to display several documents but failed to display any handgun permit to carry on the property. [Blue] was subsequently apprehended and transported to the Prince George's County Department of Corrections for processing.

After the criminal charges against him were *nol prossed,* Blue filed a Complaint in the Circuit Court for Prince George's County against the County and its police officers, alleging that his civil rights under Article 24 of the Maryland Declaration of Rights had been violated (Count I); [4] that he was falsely arrested and imprisoned (Count II); and that he was maliciously prosecuted (Count III). According to Blue, the officers arrested him without probable cause because he could lawfully wear and carry a handgun without a permit pursuant to the "supervisory employee" exception enumerated in Crim. Law § 4–203(b)(7).

The County moved for summary judgment, arguing that because Blue was engaged in providing security services in the parking lot, which was outside "the confines of the business establishment," and was unable to produce a valid Maryland handgun permit, the police had probable cause to arrest. Therefore, the County argued, Blue was precluded from maintaining an action for any of the counts pled. The court denied

---

**4.** Article 24 is the State's equivalent Due Process Clause to the U.S. Constitution of the 14th Amendment and provides:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Surprisingly, Blue did not also sue for a violation of Article 26, the State Constitution's counterpart to the Fourth Amendment to the U.S. Constitution. Article 26 provides:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

the motion and, on December 13, 2010, the case proceeded to trial before a jury.

Daniel Irving, the owner of Irving's Nightclub, testified that he hired Blue as the "head of security," which entailed "[managing] the security of the club." Specifically, Blue was responsible for making "sure that everything was safe around the club, ... [going] out ... [to] scout other people, [hiring] ... under his management, and just [making] sure that he provided safety inside and around the club." Irving stated further that Blue "had to be armed" to work at the nightclub, that he required Blue "to have a weapon on [the] premises," and that Blue was responsible for security "[i]nside and around the parking lot" of the nightclub, which was "part of [his] land."

According to Officer Thompson, however, the only information given to him to indicate that Blue was authorized by Irving to carry a weapon was Blue's "word of mouth" as he was getting handcuffed. Thompson testified that the officers' decision to arrest was based solely on Blue's inability to produce a handgun permit; thus, it was immaterial whether Blue had identified himself as "head of security."

At the close of Blue's case, the County moved for judgment on all counts. The court granted the motion as to the malicious prosecution claim on the ground that Blue failed to prove, as a matter of law, that his arrest was "motivated by any ill will, rancorous—or contempt or with the intent to injure ... at least ... as malice is defined under the law." As to the remaining counts, the court reserved ruling on the County's motion, eventually denying it and sending the case to the jury.

With respect to the alleged civil rights violation, the judge provided the jury with the following framework for evaluating the County's evidence in support of the existence or lack of probable cause:

> [Blue] has a claim against the officers for violation of his rights under Article 24 of the Maryland Constitution. This section of the Constitution guarantees, to each person cer-

tain rights, including the right to be free from unlawful seizures and arrests. If the officers did not have probable cause to arrest, then there is a violation of this right. If, however, the officers had legal justification for the seizure, or the detention or the arrest, then there is no Constitutional violation. . . .

When a law enforcement officer arrests an individual based on—upon probable cause, that action is done with legal justification. Probable cause does not have a technical definition, but has been defined as facts and circumstances sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense.

Probable cause does not require evidence sufficient to convict a person. Rather, it is sufficient that a fair probability exists that the crime had occurred. There is substantial difference between the quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause. In making an arrest, a police officer may rely upon information learned and gathered from other police officers investigating the case. In determining whether probable cause existed, it is to be evaluated with the facts known at the time, not with 20/20 hindsight, and from the perspective of a reasonable and prudent police officer, and his training and his experience. A suspect charged in a crime does not have the right to have the investigation that led to the criminal charges to have been conducted . . . as the suspect wanted.

On December 15, 2010, the jury found that the County had violated Blue's civil rights and was liable for his false arrest and false imprisonment. Compensatory damages were awarded in the amount of $106,100.00, comprised of $1,750.00 for medical expenses, $29,350.00 for lost wages, and $75,000 for non-economic damages. After the court denied the County's JNOV Motion, the County noted an appeal to this Court.

For the reasons discussed below, we reverse the judgment of the circuit court against the County and affirm the rejection of Blue's malicious prosecution claim.

## DISCUSSION

### I. Standard of Review/Tenets of Statutory Construction

■ In reviewing the circuit court's ruling on the County's JNOV motion, we consider "the evidence and reasonable inferences drawn from the evidence in the light most favorable to the party against whom the motion was made." *C & M Builders, LLC v. Strub*, 420 Md. 268, 290, 22 A.3d 867 (2011); *see also Giant Food, Inc. v. Booker*, 152 Md.App. 166, 176, 831 A.2d 481 (2003) ("We review the denial of a motion for judgment and a motion for judgment notwithstanding the verdict . . . under the same appellate lens.")

■ We will affirm a circuit court's denial of a JNOV motion if there is "any evidence, no matter how slight, that is legally sufficient to generate a jury question." *C & M Builders*, 420 Md. at 291, 22 A.3d 867 (internal citations and quotations omitted). Put another way, we will reverse the court's ruling on the motion only "if the facts and circumstances permit but a single inference as relates to the appellate issue presented." *Jones v. State*, 425 Md. 1, 31, 38 A.3d 333 (2012). We also review legal questions generated at trial, such as the interpretation of a statute, under a *de novo* standard. *Parker v. State*, 193 Md.App. 469, 498, 997 A.2d 912 (2010). Therefore, it would have been appropriate here for the circuit court to grant the County's JNOV motion if the state of the law or all reasonable inferences drawn from the evidence in a light most favorable to Blue led to a single conclusion: that the County had probable cause to arrest.

Essentially, the County's position is that the plain meaning of Crim. Law § 4–203(b)(7) did not insulate Blue from being arrested for violating Crim. Law § 4–203(a). In other words, he did not carry a handgun on the night of the offense "within the confines of the business establishment" because he was arrested in the parking lot. Blue contends that limiting Crim. Law § 4–203(b)(7)'s supervisory employee exception to only the "inside of the building . . . is entirely illogical and disingenuous" and that Blue's arrest was unjustified.

The threshold issue here is determining the scope of Crim. Law. § 4–203(b)(7).[5] We resolve this issue of statutory construction by considering "three general factors: 1) text; 2) purpose; and 3) consequences." *Town of Oxford v. Koste*, 204 Md.App. 578, 585–86, 42 A.3d 637 (2012). *Koste* notes that: "[t]ext is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity." *Id.* (Citations omitted). Legislative purpose, either manifested in the text or gleaned from other sources, often informs, and may even control, our interpretation of the statute. *Id.* at 586, 42 A.3d 637. Finally, our examination "of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality." *Id.* (Citations omitted).

## II. Text

■ Because the statute contains no definition of the relevant terms, we consult the dictionary for assistance. *Schreyer v. Chaplain*, 416 Md. 94, 101, 5 A.3d 1054 (2010). The word "confine" is defined in *Merriam–Webster's Collegiate Dictionary* (11th ed. 2005) as "something (as borders or walls) that encloses." That same dictionary tells us that "establishment"

---

**5.** An issue bubbling under the surface of this case is whether a violation or misinterpretation of a statute, like Crim. Law § 4–203 by the County is automatically transformed into a due process violation under Article 24 of the Declaration of Rights. That is certainly not the way federal courts view alleged due process violations. *See e.g., Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1059 (5th Cir.1985) ("[A] violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation.") Nor do we think it is likely that the Court of Appeals would arrive at such a position in light of the indirect authority of *Thomas v. Gladstone*, 386 Md. 693, 874 A.2d 434 (2005). There, the Court drew a line between elements of a common law tort and a constitutional tort and noted that "Thomas has not described how the misuse of the process, after its issuance, violated the Maryland Constitution." *Id.* at 702, 874 A.2d 434. Nevertheless, because the parties have not addressed the question and because it is not necessary for a resolution of this case, we will leave the issue at the bubbling stage.

means a "place of business with its furnishings and staff." *Id.* at 427.[6] We note, too, that the word "within" suggests being "in or into the interior." It would appear that the language "within the confines of the business establishment," sets forth a very specific and narrow limitation on the supervisory employee exception to the handgun law.[7]

In examining the language of Crim. Law § 4–203, with an emphasis on its context and related provisions in the whole statute, we believe it is helpful to focus on the relevant provisions as enacted in 1972 and incorporated without substantive change into a 2002 Code Revision—essentially its present form. The law before revision set forth the following exception to the handgun prohibition:

> Nothing in this section shall prevent a person from wearing, carrying, or transporting a handgun within the confines of real estate owned or leased by him or upon which he resides or within the confines of a business establishment owned or leased by him. Nothing in this section shall prevent a supervisory employee from wearing, carrying, or transporting a handgun within the confines of a business establishment in which he is employed during such time as he is acting in the course of his employment and has been authorized to wear, carry, or transport the handgun by the owner or manager of the business establishment.

*See* Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27, § 36B(c)(4); Chapter 13, *Laws of 1972.*

---

**6.** The words, "business establishment," appear in the Maryland Code less than 50 times, most often in the Alcoholic Beverages law, Article 2B of the Code (1957, 2011 Repl.Vol.). The Court of Appeals' decision in *Ferguson v. State,* 236 Md. 148, 202 A.2d 758 (1964), devotes some attention to the interpretation of the term in the context of determining the scope of a search warrant. Although far from conclusive in the context of this case, it is noteworthy that this decision refers to the business establishment as the "building" and the "premises." *Id.* at 155–56, 202 A.2d 758.

**7.** A search of the Codes of other States reveals that this language is unique to Maryland and, at least in form, appears to be the narrowest exemption in the Country in a weapon possession/concealed weapon statute.

Among other things, the 2002 Code Revision moved these two sentences into separate paragraphs, so that they now exempt:

(6) the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides or within the confines of a business establishment that the person owns or leases;

(7) the wearing, carrying, or transporting of a handgun by a supervisory employee:

(i) in the course of employment:

(ii) within the confines of the business establishment in which the supervisory employee is employed; and

(iii) when so authorized by the owner or manager of the business establishment;

The revision also substituted "on" for "within the confines of" in the "real estate" exception.[8] This understandable change by the revisors to this locationally-amorphous exemption does not suggest that the more specific "business establishment" exemption should also be read broadly. Moreover, it is noteworthy that the revisors made no change to the place-restrictive language of "business establishment" exceptions, such as the one for supervisory employees. *See Marshall v. Walker*, 958 F.Supp. 359, 365 (N.D.Ill.1997).[9]

## III. Consequences—Relevant Caselaw

Blue contends that "it would defy logic for the club owner to hire a head of security ... and restrict his carrying the gun to

---

8. Surprisingly, the Revisor's Note to § 4–203 does not specifically describe the purpose of this change. However, the Note observes generally that "[t]his section is new language derived without substantive change from former Art. 27, § 36B(b) and (c).

9. *Marshall* notes the substantial difference between two exceptions to the Illinois weapon possession statute: one referring to being "in" a place of business and the other keyed to being "on" his or her land. 958 F.Supp. at 365. The U.S. District Court held that the former exemption required the possessor of the weapon to be "inside the building," not "at the rear of his building." *Id.* The court also construed the "land" exemption narrowly to exclude sidewalks and alleys. *Id.*

the building only." However, crediting this argument would allow the facts surrounding the employer's needs to trump the text of the statute. Moreover, caselaw from other jurisdictions interpreting home/real estate and business exemptions from weapon possession/concealed weapon statutes demonstrates that the County's proffered narrow construction of the business establishment exception is far from aberrational. For example, in *People v. Tolbert,* 253 A.D.2d 832, 680 N.Y.S.2d 96 (1998), a New York court concluded that an exemption "in a person's home or place of business" from the State's ban on weapons possession was inapplicable when Tolbert's possession of a loaded firearm "occurred out-of-doors, and not any sense inside." *Id.* at 97. Similarly, in *Dickerson v. State,* 975 A.2d 791 (Del.2009), the Delaware Supreme Court said that because the defendant voluntarily left his trailer carrying a concealed handgun, he could not establish a defense of "home possession." *Id.* at 795–96. *See also Marshall,* 958 F.Supp. at 365 ("[T]he statute refers to being 'in' a place of business, unlike the 'on' his land exception. [The possessor] alleges he was at the rear of his building, not in his building. To the extent a rental building can constitute a place of business under the statute, the exception would be limited to being inside the building. Such a construction would be consistent with the intent to protect the general public from the dangers of firearms"); *State v. Davidson,* 217 N.W.2d 630, 631–32 (Iowa 1974) (Defendant who stepped out of his apartment into a common hallway with a firearm was not exempt as being "in his own dwelling house or other land possessed by him"); *Dunbar v. State,* 162 Ind.App. 375, 319 N.E.2d 630, 632 (1974) (The defendant was not in his "place of abode" when he possessed a weapon in a public alley behind his residence); *Baird v. State,* 38 Tex. 599, 601–02 (1873) ("The place of business contemplated by the law evidently has reference to a particular locality, appropriated exclusively to a local business, such as the farm, the store, the shop . . . ."); *Wilson v. State,* 418 S.W.2d 687, 688 (Tex.Crim.App.1967) (Defendant carrying a pistol in the driveway adjacent to the building in which he lived was not exempt from pistol law).[10]

---

**10.** An A.L.R. annotation provides a comprehensive summary of the law in this area. *See Annot.: Scope and effect of exception, in statute*

Finally, Blue's "absurd consequences" argument fails to convince for another reason. It would unreasonably transform a narrow exception grounded in property and patron protection into a dangerous and open-ended one. It is possible perhaps to screen patrons at the door for possession of weapons, but it is quite unlikely that motor vehicles in a parking lot could be similarly checked. The display of a weapon by a security guard indoors could halt violence by unarmed patrons inside the establishment. However, drawing a handgun to chase a malefactor across a parking lot, where he or she may have a weapon hidden in a car, invites possible battlefield-type carnage.

## IV. Purpose

The purpose of the "supervisory employee" exception cannot be fully understood apart from the prohibition on handgun possession—both of which were enacted in 1972. *See* Norman J. Singer and J.D. Shambie, *Statutes and Statutory Construction* (7th Ed. 2007) at § 47.11 ("When a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exception").

Prior to 1972, a person's possession of a handgun was controlled by Md.Code (1957, 1971 Repl.Vol.), Art. 27, § 36. Section (a) made it unlawful for any person to carry any weapon including a "pistol . . . or any other dangerous or deadly weapon of any kind, whatsoever . . ." concealed on his person or openly with the intent to injure. Subsection (b) carved an exception from that rule for officers and other

---

*forbidding carrying of weapons, as to person on his own premises or at his place of business,* 57 A.L.R.3d 938 (1974, 2012 Supp.). The annotation also contains summaries of cases where, under statutory language less restrictive than that found in Maryland law, a person was held to be exempt from carrying a weapon outside a structure. *See e.g., Peoples v. State,* 287 So.2d 63 (Fla.1973) (sitting on a bench directly outside the door of a store in which he worked); and *Sherrod v. State,* 484 So.2d 1279 (Fla.App.1986) (standing in parking lot 25–30 feet from his apartment complex).

people carrying a weapon "as a reasonable precaution against apprehended danger."

In 1972, the General Assembly enacted a stronger handgun control law in response to an "alarming increase" in the number of violent crimes perpetrated with handguns and a related "substantial increase" in the number of deaths and injuries traceable to persons carrying handguns in public who were "inclined to use them in criminal activity." Chapter 13, *Laws of 1972*. As the Court of Appeals observed in *State v. Crawford*, 308 Md. 683, 521 A.2d 1193 (1987), the primary purpose of the new law was to prevent the possession of handguns in public.

> It is clear that the 1972 handgun control legislation is designed to discourage and punish the possession of handguns on the streets and public ways. The legislature determined that if a citizen is apprehensive of impending danger, his recourse is not to immediately arm himself, but instead to seek help from the State—by applying for a permit to carry a gun or, of course, by contacting the police for protection. Thus, by controlling the number of handguns in the public, and not permitting citizens to carry guns when there is time for alternative, safe action, the legislature sought to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

*Id.* at 695, 521 A.2d 1193 (citations omitted). *See also State v. Brinkley*, 102 Md.App. 774, 778, 651 A.2d 465 (1995).

In implementing a more stringent statute, the Legislature established a "blanket rule" prohibiting any person from carrying, whether open or concealed, any handgun. *Crawford*, 308 Md. at 694, 521 A.2d 1193. A limitation on the coverage of the statute carved out five specific exceptions to what would otherwise be criminal conduct, making it lawful for "law enforcement personnel, persons with permits, persons transporting handguns for legitimate purposes, and persons *on* their own property" to carry handguns. *Id.* at 694–95, 521 A.2d 1193 (Emphasis added). *See also Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 545, 489 A.2d 1114 (1985)

(The purpose of the real estate exception "is to permit those, who believe that a handgun is necessary to defend their lives or property at home or in their place of business, to carry one *on* such premises.") (Emphasis added); *Wieland v. State,* 101 Md.App. 1, 30, 643 A.2d 446 (1994) ("The applicability of [the real estate] exception to the carrying of a handgun by the appellant *in* his own home seems clear.") (Emphasis added).

The narrowness of the law's exceptions indicates that they are not intended to override the statute's primary purpose of controlling the possession of handguns to provide public safety. *See* Singer and Shambie, *supra* at § 47.11. *Marshall,* 958 F.Supp. at 365. (Limiting a place of business exception "to being *inside* the building" would be "consistent with the intent to protect the general public from the dangers of firearms.") [11]

Having examined the text and entire statute, its purpose, and the consequences of Blue's proffered interpretation, we believe that the General Assembly intended to restrict the supervisory employee exception in the handgun control law to the interior of the business establishment where the supervisory is employed, *i.e.,* the nightclub.[12] Here, the evidence adduced at trial sufficiently demonstrated that on the night of arrest, Blue was wearing and carrying a handgun, without a permit, in the parking lot of Irving's Nightclub. In our view, these facts would establish probable cause as a matter of law. Therefore, Blue could not successfully maintain his due process claim. Although there are some instances in which probable cause is a question of fact to be resolved by the jury,

---

**11.** Because this case can be resolved solely on the basis of ordinary rules of statutory construction, we need not resolve the issue of whether the burden of showing the application of "the business establishment" exception is on the defendant or the State. *Compare* 57 A.L.R.3d at § 2 with *John Crane, Inc. v. Scribner,* 369 Md. 369, 395, 800 A.2d 727 (2002) and *Baird, supra,* 38 Tex. at 602.

**12.** There is no evidence in this case that the nightclub conducted business in the parking lot or, as an alcoholic beverage licensee, could have done so. Thus, our interpretation of the statute goes no further than the facts of this case. In addition, we express no view on the application of this exemption to an establishment that conducts its business wholly or partly outdoors.

this is not one of them. No determination of liability was required by the fact finder and, as a matter of law, the County's JNOV motion should have been granted.

Reversal is also required for the false imprisonment/false arrest count of the judgment. This tort consists of a deprivation of a person's liberty without his or her consent and without legal justification. *State v. Dett,* 391 Md. 81, 92, 891 A.2d 1113 (2006). If probable cause existed that Blue was violating the handgun statute, as we have determined, then legal justification existed for his arrest/imprisonment. The same is true of Blue's malicious prosecution claim, one element of which is the initiation of a criminal proceeding "without probable ᵥ cause." *Heron v. Strader,* 361 Md. 258, 264, 761 A.2d 56 (2000). Here, we have found that probable cause did exist for the actions of the County police. While we agree with the circuit court that Blue has not shown that the officers acted maliciously, the existence of probable cause is an additional ground to affirm the rejection of this count of the judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY ON COUNTS ONE AND TWO REVERSED. JUDGMENT ON COUNT THREE AFFIRMED. COSTS TO BE PAID BY APPELLEE.**