489 A.2d 1114

**MONTGOMERY COUNTY, Maryland et al.**

v.

**ATLANTIC GUNS, INC. et al.**

**No. 157, Sept. Term, 1983.**

Court of Appeals of Maryland.

April 3, 1985.

Roger W. Titus, Rockville, for appellants.

Richard S. McKernon, Frederick, McKernon & Rand, Rockville, for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

The issue in this case is whether a Montgomery County ordinance, which prohibits the sale of ammunition unless certain requirements are met, is invalid on the ground that the area has been preempted by State law.

On June 7, 1983, the County Council for Montgomery County enacted Bill No. 17–82, codified as Montgomery County Code § 57–12, providing, *inter alia,* that ammunition may not be sold to anyone unless (1) the sale is made in person, (2) the purchaser exhibits, at the time of sale, a valid registration certificate for the firearm in which the ammunition is to be used, or, if a non-resident, proof that the firearm is lawfully possessed, and (3) the ammunition is of the same calibre as the firearm that is registered or lawfully possessed.[1] The law became effective on September 20, 1983. On that date, Atlantic Guns, Inc., Stephen G. Schneider, Constantine P. Chaconas, and William H. Ran-

---

\* DAVIDSON, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

1. The county ordinance tracks the language of D.C.Code Ann. § 6–2352 (1981).

dolph filed a bill of complaint in the Circuit Court for Montgomery County, seeking a declaratory judgment and injunctive relief. Named as defendants were Montgomery County, the Montgomery County Council, and Charles W. Gilchrist, County Executive.[2] The plaintiffs challenged the validity of Bill No. 17–82 on three separate grounds: (1) the County Council did not have the power to enact the bill; (2) State law preempted the subject matter of the bill; and (3) the bill was in conflict with State law.

Both sides filed motions for summary judgment, and, after argument, the trial court granted the plaintiffs' motion. The court issued an order declaring Bill No. 17–82 invalid and enjoining its enforcement, holding that the subject matter of the bill was expressly preempted by State law. The trial court did not reach the other issues raised in the bill of complaint. The defendants appealed to the Court of Special Appeals, and, before any proceedings in the intermediate appellate court, they filed a petition for a writ of certiorari in this Court. We granted the petition and shall affirm on the same ground as the trial court.

In 1972, the General Assembly of Maryland enacted extensive and comprehensive provisions governing all aspects of the wearing, carrying, and transporting of handguns, Ch. 13 of the Acts of 1972. The dominant purpose of the Act was "to stop the alarming rise in the use of handguns in the commission of crimes of violence," *Dillon v. State*, 277 Md. 571, 584, 357 A.2d 360 (1976) (quoting from *Wright v. State*, 24 Md.App. 309, 317, 330 A.2d 482, *cert. denied*, 274 Md. 733 (1975)). The Act's provisions include criminal penalties for various violations, along with seizure and forfeiture procedures. In addition to the criminal provisions, the Act sanctioned the use of handguns for such things as target shooting, home and business protection, and law enforcement purposes. The statute also provided detailed requirements for the issuance of permits to carry handguns. The

---

**2.** All defendants are hereinafter referred to as "the County."

Act created a new subheading in the criminal code, entitled "Handguns," and most of the Act's provisions are codified in this subheading, Code (1957, 1982 Repl. Vol., 1984 Cum. Supp.), Art. 27, §§ 36B–36F. But the preemption provision involved in this case, § 6 of Ch. 13, is not codified. That section expressly preempts *all* local law restrictions on the wearing, carrying, or transporting of handguns in the following language:

"SEC. 6. *Be it further enacted,* That all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said matters."

The County here argues that the preemptive language of the statute applies only to handguns without ammunition and "does not apply, by its terms, to the wearing, carrying, [or] transporting ... of *ammunition* of any nature whatsoever." (Petitioners' Brief, p. 8.) In our view, the provisions of the Act, beginning with the declaration of policy, demonstrate the lack of merit in the County's interpretation of the scope of the express preemption clause.

The General Assembly's declaration of policy, codified in § 36B(a), is as follows:

"The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens."

Handguns used to perpetrate violent crimes are generally loaded. An increase in the number of people killed or injured cannot be traceable to the use of unloaded handguns. Further regulations to preserve the peace and tranquility of the State were necessary because of the increasing criminal use of loaded handguns, not the wearing, carrying, or transporting of unloaded ones. In light of these findings and declarations, it makes little sense to suggest that the General Assembly was not concerned with regulating guns loaded with ammunition.

Section 36B(c)(1) recognizes certain exceptions to the prohibition against wearing, carrying, or transporting a handgun. These exceptions include law enforcement personnel, members of the armed forces while on duty or travelling to or from duty, jailers, prison guards, wardens, and sheriffs and sheriffs' deputies who may wear, carry, or transport handguns when on active assignment engaged in law enforcement. Permission to wear, carry, or transport only unloaded handguns would be of little use to such persons.

Section 36B(c)(3) recognizes further exceptions:

"(3) Nothing in this section shall prevent any person from carrying a handgun on his person or in any vehicle while transporting the same to or from the place of legal purchase or sale, or between bona fide residences of the individual, or between his bona fide residence and his place of business, if the business is operated and substantially owned by the individual, or to or from any bona fide repair shop. Nothing in this section shall prevent any person from wearing, carrying, or transporting a handgun used in connection with a target shoot, formal or

informal target practice, sport shooting event, hunting, trapping, dog obedience training class or show or any organized military activity while engaged in, on the way to, or returning from any such activity. Nothing in this section shall prevent any bona fide gun collector from moving any part or all of his gun collection from place to place for public or private exhibition. *However, while travelling to or from any such place or event referred to in this paragraph, a handgun shall be unloaded and carried in an enclosed case or enclosed holster."* (Emphasis added.)

Obviously, the last sentence adds a requirement that, in the circumstances covered by this subsection, the handgun must be unloaded. It is an unavoidable conclusion that, in other circumstances involving an exception to the prohibition against wearing, carrying or transporting a handgun, the gun may be loaded.

Section 36B(c)(4) recognizes, *inter alia,* that a person may wear, carry, or transport a handgun "within the confines of real estate owned or leased by him or upon which he resides or within the confines of a business establishment owned or leased by him." The purpose of this section is to permit those, who believe that a handgun is necessary to defend their lives or property at home or in their place of business, to carry one on such premises. Such authorization obviously contemplates a handgun with ammunition.

Subsections (i) and (ii) of § 36C(a) list as subject to seizure and forfeiture "[a]ny handgun being worn, carried, or transported in violation" of the Act and "[a]ll ammunition or *other parts of or appurtenances to* any such handgun...." The italicized language requires the conclusion that ammunition is to be considered either a part of or an appurtenance to a handgun and is regulated. *Cf. Howell v. State,* 278 Md. 389, 394, 364 A.2d 797 (1976).

Section 36D(a) provides that a law enforcement officer may make a limited search of a person when he has a reasonable belief that, among other things, such "person

may be wearing, carrying, or transporting a handgun in violation of § 36B" and "by virtue of his possession of a handgun, such person is or may be presently dangerous to the officer or to others." The reference to danger confirms that the Legislature was referring to both the gun and its ammunition.

Section 36E governs, in detail the issuance of permits to carry handguns. Subsection (a)(6) of this section provides that, before a permit shall be issued to an applicant, the applicant must have

"good and substantial reason to wear, carry, or transport a handgun, provided however, that the phrase 'good and substantial reason' as used herein shall be deemed to include a finding that such permit is necessary as a reasonable precaution against apprehended danger."

Were the permit to allow the carrying of an unloaded handgun only, it is difficult to understand how carrying such a weapon would represent "a reasonable precaution against apprehended danger."

Section 36E(i) recognized certain initial exceptions to the permit requirement as follows:

"Notwithstanding any other provision of this subheading, the following persons may, to the extent authorized prior to March 27, 1972, and subject to the conditions specified in this subsection and subsection (j) hereof continue to wear, carry, or transport a handgun without a permit:

"(1) Holders of special police commissions issued under §§ 60 to 70 of Article 41 of the Annotated Code of Maryland, while actually on duty on the property for which the commission was issued or while travelling to or from such duty;

"(2) Uniformed security guards, special railway police, and watchmen who have been cleared for such employment by the Maryland State Police, while in the course of their employment or while travelling to or from the place of employment;

"(3) Guards in the employ of a bank, savings and loan association, building and loan association, or express or armored car agency, while in the course of their employment or while travelling to or from the place of employment;

"(4) Private detectives and employees of private detectives previously licensed under former § 90A of Article 56 of the Annotated Code of Maryland, while in the course of their employment, or while travelling to or from the place of employment."

According to the defendants' interpretation of the statute, what this section authorized was the wearing, carrying, or transporting only of unloaded handguns by security guards, railway police, bank guards, private detectives, etc., and that in Montgomery County such persons would have to comply with county regulations in order to obtain ammunition for the handguns which they are authorized by State law to carry. Such an interpretation of the preemption provision is wholly unreasonable.

Finally, § 36F makes abundantly apparent the relationship between handguns and ammunition. Subsection (a)(1) of that section defines "antique firearm," in part, *in terms of* the ammunition it uses. If the firearm uses rimfire or conventional centerfire fixed ammunition still manufactured in the United States or readily available in ordinary commerce, the firearm *is* regulated. Otherwise, it is not. Similarly, the terms "rifle" and "shotgun" are defined in subsections (a)(2) and (a)(5), respectively, in part by the ammunition they use.[3]

---

**3.** It is noteworthy that subsequent enactments adding sections to the "Handguns" subheading of Art. 27 also illustrate that the General Assembly intended to regulate both loaded and unloaded handguns. Thus, Ch. 239 of the Acts of 1981 added § 36B(c)(5), which permits the carrying or transporting of a loaded "signal pistol . . . in any vessel used upon the waterways of this State, or if *unloaded* and carried in an enclosed case, in any vehicle." (Emphasis added.) Section 2 of Ch. 482 of the Acts of 1982 added § 36G to the subheading. That section is entitled "Restrictions on possession of firearms at demonstrations in public places." In subsection (a)(3)(i), the term "firearm"

The above-cited provisions of the Act provide overwhelming evidence that it regulates ammunition as well as handguns. Additionally, in *Howell v. State, supra,* 278 Md. at 396, 364 A.2d 797, we discussed whether a tear gas pistol was a handgun within the meaning of § 36F of the Act, and we concluded that to be such a handgun, the pistol

> "must be a firearm or it must be readily or easily convertible into a firearm. We further conclude that to be a firearm it must propel a missile by gunpowder or some such similar explosive and that the gas here involved is not a missile within the natural and ordinary signification of the term. When to these conclusions is added the testimony of the expert witness that this device could not 'be readily or easily converted into ... a gun which would be explosive of projectiles,' the conclusion is inevitable that this device is not a handgun within the meaning of the statute."

Thus, our case law has also recognized the inseparability of handguns and ammunition.

In 67 Op.Att'y.Gen. 316 (1982), the Attorney General of Maryland, discussing the proposed Montgomery County ordinance and another similar ordinance, reached the same conclusion which we do here. Although the Attorney General's opinion interpreting legislation is not binding on this Court, it is entitled to careful consideration. *Auto Trade Ass'n v. Harold Folk Enter.,* 301 Md. 642, 662, 484 A.2d 612 (1984); *Bd. of Examiners in Optometry v. Spitz,* 300 Md. 466, 476, 479 A.2d 363 (1984). In that opinion, the Attorney General stated (*id.* at 319–320):

> "[i]t is obvious that the local legislative proposals in question would be preempted if they directly restricted possession or sale of handguns. In our view, State law

is defined as "a pistol or revolver, rifle, shotgun, short-barreled rifle, short-barreled shotgun, or any other firearm, *whether loaded or unloaded.*" (Emphasis added.)

mandates the same result with respect to restrictions on handgun ammunition.

"Ammunition is an integral element of a handgun. Indeed, the ability to detonate and propel projectile ammunition is the very factor—the *sine qua non*—that distinguishes firearms from other devices. *Howell v. State,* 278 Md. 389, 364 A.2d 797 (1976); 61 *Opinions of the Attorney General* 647 (1976). *See also* Article 27, § 441(g) (defining 'antique pistol or revolver').

"The State handgun laws recognize this reality. For example, the law specifies that when one travels between places where one may lawfully carry a handgun even without a permit—e.g., one's home or business—'[the] handgun shall be *unloaded* and carried in an enclosed case or enclosed holder'. Article 27, § 36B(c)(3) (emphasis added). This requirement strongly suggests that the General Assembly intended the converse as well: persons who are at a place where they may lawfully carry handguns without a permit, like their homes or businesses, may also load them with ammunition—the very element that renders the handguns operable as such.

"The provisions of State law that preempt local regulation of handguns can only be effectuated if they are understood to preempt local regulation of handgun ammunition as well."[4]

■ The State Act regulates both loaded and unloaded handguns, and expressly preempts all local laws regulating the same subject. Bill No. 17–82 restricts the wearing, carrying, or transporting of loaded handguns. It is therefore invalid.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. PETITIONERS TO PAY COSTS.

---

**4.** We note that the County Attorney for Montgomery County also advised the County Council that, in his opinion, the proposed ordinance was invalid.