76 A.3d 1129

Roguell BLUE

v.

PRINCE GEORGE'S COUNTY, Maryland, et al.

No. 87, Sept. Term, 2012.

Court of Appeals of Maryland.

Sept. 27, 2013.

682

Jeanett P. Henry (Silver Spring, MD), on brief, for Petitioner.

Shelley L. Johnson, Associate County Attorney (William A. Snoddy, Deputy County Attorney; M. Andree Green, County Attorney, Upper Marlboro, MD), on brief, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and

BELL,* JJ.

McDONALD, J.

Ernie Banks, the always cheerful Hall of Fame shortstop and first baseman for the Chicago Cubs, used a baseball bat to hit home runs out of what he referred to as the "friendly confines" of Wrigley Field.[1] In *Romeo and Juliet,* the ill-fated Mercutio spoke of laying one's sword upon a table when entering the "confines of a tavern." [2]

Maryland law regulating a modern weapon of choice also makes reference to the "confines" of an establishment. In 1972, the General Assembly enacted emergency legislation to limit the "widespread carrying of handguns on streets and in vehicles...." An exception to that law allows a supervisory employee of a business to carry a handgun without a permit "within the *confines* of the business establishment in which" the employee works.[3]

Although the Legislature likely had no thought of Ernie Banks or Shakespeare when it used the term "confines" in the handgun law, in this case we must decide whether it used the word in the same sense as they did—*i.e.,* the interior of an enclosed or walled space. Petitioner Roguell Blue, the head of security for a nightclub, was arrested by the Prince George's County Police for carrying a handgun without a permit on the open parking lot of the nightclub. Mr. Blue brought suit against the County, contending at trial that his arrest was

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of the Court; after being recalled pursuant to the Constitution, IV, Section 3A, he also participated in reaching the decision in the case.

**1.** *See* Peter V. Bella, *Ernie Banks to Receive Presidential Medal of Freedom,* Chicago Now (August 9, 2013); Jack Curry, *A Chat with Ernie Banks, the Classy Cub,* New York Times (April 27, 2008).

**2.** William Shakespeare, *Romeo and Juliet,* Act III, scene i, line 6.

**3.** Maryland Code, Criminal Law Article, § 4–203(b)(7) (emphasis added).

illegal because the parking lot should be considered to be "within the confines" of the nightclub.

We agree with the Court of Special Appeals that there is no reason to believe that the Legislature used the term "confines" with respect to a "business establishment" other than in its ordinary sense, which would not include an open parking lot adjacent to a nightclub. We thus affirm the judgment of that court directing judgment in favor of the County.

## Background

*Handgun Permit Requirement and Exceptions*

Under Maryland law, an individual may not "wear, carry, or transport a handgun, whether concealed or open, on or about the person[.]" Maryland Code, Criminal Law Article ("CR"), § 4–203(a)(1)(i).[4] There are numerous exceptions to this prohibition. As a general rule, a member of the public may legally carry a handgun only by obtaining a permit pursuant to the handgun permit law—one of the exceptions to the prohibition.[5] CR § 4–203(b). Pertinent to this case, the statute also excepts from the prohibition:

the wearing, carrying, or transporting of a handgun by a supervisory employee:

(i) in the course of employment;

(ii) within the confines of the business establishment in which the supervisory employee is employed; and

(iii) when so authorized by the owner or manager of the business establishment[.]

---

**4.** The statute defines "handgun" as follows:
   (1) "Handgun" means a pistol, revolver, or other firearm capable of being concealed on the person.
   (2) "Handgun" includes a short-barreled shotgun and short-barreled rifle.
   (3) "Handgun" does not include a shotgun, rifle, or antique firearm.
   CR § 4–201(c).

**5.** The constitutionality of the State handgun law and the permitting scheme have been upheld by this Court and by the United States Court of Appeals for the Fourth Circuit. *Williams v. State,* 417 Md. 479, 10 A.3d 1167 (2011); *Woollard v. Gallagher,* 712 F.3d 865 (4th Cir.2013).

CR § 4–203(b)(7). Violation of the statute is a misdemeanor that carries maximum penalties that vary depending on the circumstances and location of the offense, as well as whether the defendant has prior firearms-related convictions. CR § 4–203(c).

*Mr. Blue's Arrest*

On the night of June 17, 2008, Mr. Blue was working as the head of security for Irving's Nightclub,[6] a strip club in Capitol Heights, Maryland. His employer required that he be armed with a handgun.[7] During the evening, he came to believe that there was "illicit sexual activity" taking place outside the club in a car in the nightclub's parking lot. Mr. Blue confronted the individuals involved, ordered a man out of the car, and attempted to pat him down for weapons. The man ran from the scene, and Mr. Blue and other security guards relented when he left the parking lot. Mr. Blue then called the Prince George's County Police Department to report the incident.

As it turned out, however, officers from the Police Department were already on their way to the nightclub in response to a report of gunshots. Upon arrival, the officers learned that Mr. Blue was carrying a handgun and asked him to produce a valid permit for it. Instead, Mr. Blue showed them a laminated copy of CR § 4–203 and informed them that he had the permission of the club owner to possess the handgun on the premises.[8] Mr. Blue was arrested and charged with

---

**6.** The name of the nightclub appears as both "Irvin's" and "Irving's" in the record. When called as a witness at trial, the owner spelled his last name as "Irving." We will adopt the latter spelling in this opinion.

**7.** Mr. Blue was dressed in a uniform similar to that of a special unit police officer, although he was not a police officer. Nor was he certified as a security guard under Maryland Code, Business Occupations & Professions Article, § 19–401 *et seq.* State regulations governing certified security guards require an armed security guard to have a handgun permit. COMAR 29.04.01.12D.

**8.** Mr. Blue also attempted to have the officers review other documents related to his work duties and firearms training, but the officers did not

"wearing, carrying, or transporting a handgun in public" in violation of CR § 4–203(a)(1). Those charges were later disposed of with the State's entry of a *nolle prosequi*.

## Mr. Blue's Lawsuit

On September 14, 2009, Mr. Blue filed a lawsuit in the Circuit Court for Prince George's County against the County and three of the police officers involved in his arrest.[9] In his complaint, he alleged a violation of Article 24 of the Maryland Declaration of Rights,[10] false arrest and imprisonment, and malicious prosecution.

A trial was held from December 13 to December 15, 2010. At the trial, Mr. Blue asserted that he was legally permitted to carry the handgun under CR § 4–203(b)(7) as a "supervisory employee," and that the officers therefore did not have probable cause to arrest him. The nightclub owner testified that Mr. Blue's position required him "to have a weapon on [the] premises" in order to ensure "that everything was safe around the club," including "[i]nside and around the parking lot." At the close of Mr. Blue's case, the Circuit Court, finding that Mr. Blue had failed to prove that the arrest was motivated by "ill will . . . or contempt or with the intent to injure," granted the County's motion for judgment on the

consider these materials relevant to whether he could legally carry the gun. In particular, Mr. Blue displayed to the officers a card identifying himself as a "Special Agent" of the "United States Fugitive Enforcement Agency" with a legend stating that he was "authorized to arrest . . . by Federal Law and U.S. Supreme Court." He later testified that the "United States Fugitive Enforcement Agency" was a private business that he owned.

9. All defendants are represented by the County Attorney and have presented a joint defense. For ease of reference we will refer to the defendants collectively as "the County."

10. That provision reads:
   That no man ought to be taken or imprisoned or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or by the Law of the land.
   Maryland Constitution, Declaration of Rights, Article 24.

malicious prosecution claim. The remaining two claims were eventually sent to the jury.

The jury found in favor of Mr. Blue on his State constitutional claim and on the false arrest and imprisonment claim. He was awarded $106,100 in damages, comprised of $29,350 for lost wages, $1,750 for medical expenses, and $75,000 in other non-economic damages. The trial court denied the County's motion for judgment notwithstanding the verdict.

Both Mr. Blue and the County appealed. On August 30, 2012, the Court of Special Appeals, in a reported decision, upheld the dismissal of the malicious prosecution claim, but reversed the judgment based on the jury verdict. 206 Md. App. 608, 51 A.3d 42 (2012). The intermediate appellate court reasoned that, because Mr. Blue had been carrying his handgun in the parking lot of the club and not "within the confines of the business establishment"—which it construed to mean the interior of the building—the officers had probable cause to arrest him. This precluded a finding in Mr. Blue's favor on his constitutional and false arrest and imprisonment claims.

Mr. Blue subsequently filed a petition for writ of certiorari in this Court, which we granted on November 16, 2012, to determine whether the supervisory employee exception to Maryland's handgun law allows a security guard to carry a handgun on the parking lot of a nightclub without a permit.

### Discussion

■ The parties apparently agree that, if the exception for a supervisory employee in the Maryland handgun law did not apply, the officers had legal justification to arrest Mr. Blue under CR § 4–203(a). Thus, resolution of this appeal turns on whether CR § 4–203(b)(7) authorized Mr. Blue to carry a handgun without a permit on the parking lot of Irving's Nightclub.[11]

---

11. In order to succeed on a claim for false arrest and imprisonment, a plaintiff must show that he or she was deprived of liberty without consent or legal justification. *State v. Dett*, 391 Md. 81, 92, 891 A.2d 1113 (2006). If Mr. Blue was not authorized to carry a handgun in the

*Standard of Review*

■ The crux of this case is the construction of CR § 4–203(b)(7)—in particular, whether the phrase "within the confines of the business establishment" includes an open parking lot associated with a business conducted inside a building. This is a question of law on which we owe no deference to the Circuit Court or the Court of Special Appeals. *See Jones v. State,* 425 Md. 1, 30–31, 38 A.3d 333 (2012); *Long Green Valley Ass'n v. Bellevale Farms, Inc.,* 432 Md. 292, 311, 68 A.3d 843 (2013).

■ The goal of statutory construction is to discern and carry out the intent of the Legislature. Our colleagues on the Court of Special Appeals have aptly summarized this quest, based on this Court's past decisions, as one that requires an examination of the statutory text in context, a review of legislative history to confirm conclusions or resolve questions from that examination, and a consideration of the consequences of alternative readings. "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality." *Town of Oxford v. Koste,* 204 Md.App. 578, 585–86, 42 A.3d 637 (2012), *aff'd,* 431 Md. 14, 63 A.3d 582 (2013) (citations omitted).

---

nightclub parking lot, the officers would have had justification to arrest him for a violation of CR § 4–203(a) and he would not have a claim for false arrest and imprisonment. *See Montgomery Ward v. Wilson,* 339 Md. 701, 721, 664 A.2d 916 (1995) ("[A] police officer carrying out ... an arrest ... is not liable for false imprisonment in connection with that arrest if the officer had legal authority to arrest under the circumstances."). In those circumstances, the arrest would likewise be in accordance with the "[l]aw of the land," Maryland Constitution, Declaration of Rights, Article 24, precluding Mr. Blue's constitutional claim as well.

*Supervisory Employee Exception*

The elements of the supervisory employee exception in CR § 4–203(b)(7) are clear. A supervisory employee may possess a handgun (1) "in the course of employment"; (2) "within the confines of the business establishment in which the supervisory employee is employed"; and (3) "when so authorized by the owner or manager of the business establishment." The County does not dispute that Mr. Blue possessed the handgun in the course of his employment and was authorized by the owner of the club to carry it. The only element of the exception in dispute is whether Mr. Blue was carrying the handgun "within the confines of the business establishment" in which he was employed when he was on the parking lot.

*"Within the Confines of the Business Establishment"*

*Statutory Text*

The statute itself does not provide a specific definition for the phrase "within the confines of the business establishment." Common dictionary definitions provide some direction.[12] "Within" and "confines" are defined respectively as "in or into the interior" and "something (as borders or walls) that encloses." Webster's Ninth New Collegiate Dictionary (9th ed. 1987) at 275, 1355. "Business" is defined as "a commercial or sometimes an industrial enterprise" and an "establishment" is defined as "a place of business or residence with its furnishings and staff." *Id.* at 190, 425. Finally, the statutory exception identifies the business establishment as the one *"in which* the supervisory employee is employed"— again placing the emphasis on interior space. CR § 4–203(b)(7)(ii) (emphasis added).

Putting these definitions together, "within the confines of the business establishment" appears to mean the interior space of a commercial enterprise, where one may find its

---

**12.** A dictionary definition may provide a "useful starting point," though not a dispositive answer, in determining a statute's meaning. *Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 447, 697 A.2d 455 (1997).

furnishings and staff, enclosed by walls or similar bounds. With application to this case, the business of a strip club occurs inside the building that houses its "furnishings and staff." The business of such an establishment is not conducted in an open parking lot.[13]

■ The use of the term "confines" in the statute apparently denotes some area distinct from the entire area owned by or associated with the business.[14] Otherwise, if the area being referenced was co-extensive with the entire area owned by or associated with the business, the drafters could simply have written "within the business establishment"; "confines" would have been redundant and unnecessary. It is a commonplace principle that interpretations that treat statutory language as surplusage should be avoided. *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302–3, 783 A.2d 667 (2001). Thus, we agree with the Court of Special Appeals that the language of the exception indicates that it is "specific and narrow." 206 Md.App. at 618, 51 A.3d 42.

*Statutory Context*

The supervisory employee exception is not the only part of the handgun law that refers to the "confines" of a "business establishment." Another exception in the statute permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides or *within the confines of a business establishment* that the person owns or leases." CR § 4–203(b)(6)

---

**13.** One might imagine various types of business establishments in which the "business" of the establishment is conducted in the open air, although in a space clearly bounded by walls or fences. The "confines" of such a business establishment might well extend outside of a building. But that is not this case.

**14.** The concept of confinement, as well as the term "confines," appears elsewhere in the Maryland Code. One obvious example involves prisons—places of confinement. When the General Assembly refers to the "confines of the correctional facility," it seems quite clear that the Legislature means an enclosed area of the facility. *See* Maryland Code, Correctional Services Article, § 7–308(b)(2).

(emphasis added). This exception allows an individual to carry a handgun without a permit in three places:

1—on real estate that the person owns or leases

2—on real estate where the person resides

3—within the confines of a business establishment that the person owns or leases

The reference to "real estate" in this exception obviously encompasses buildings and other improvements on that real estate, as it presumably is not limited to people who reside on bare land. It is evident that "within the confines of the business establishment" can refer to something less than the "real estate" on which the business sits. *Cf. Marshall v. Walker*, 958 F.Supp. 359, 365 (N.D.Ill.1997) (construing weapons possession statute and distinguishing exception relating to possession "in" a place of business as opposed to "on" the person's land).

### Legislative History of CR § 4-203(b)(7)

It appears that the State's initial effort to regulate handgun possession was enacted in 1886. Chapter 375, Laws of Maryland 1886. That law flatly prohibited the wearing or carrying of concealed pistols by an individual who was not a "conservator of the peace," as well as the open wearing or carrying of pistols with the intent to cause injury.[15] This strict prohibition did not last long, however. Eight years later, the General Assembly—noting that the law "does not make proper discrimination in favor of those who travel in dangerous localities, or from other imminent necessity, or prudent precaution in the presence of threatened injury to their lives or persons,

---

**15.** The statute read:

> Every person not being a conservator of the peace entitled or required to carry such weapon as part of his official equipment, who shall wear or carry any pistol ... concealed upon or about his person, and every person who shall carry or wear any such weapon openly with the intent or purpose of injuring any person, shall, upon conviction thereof, be fined not more than five hundred dollars or be imprisoned not more than six months in jail or the House of Correction.

Chapter 375, Laws of Maryland 1886.

may reasonably arm themselves for self-protection"—added a broad exception for carrying the weapon "as a reasonable precaution against apprehended danger." Chapter 547, Laws of Maryland 1894.

That proviso persisted throughout the statute's various iterations until 1972. In the early 1970s, handgun use resulting in death and serious injuries had risen to troubling levels in the State. In January 1972, the Governor submitted emergency legislation to curb "the widespread carrying of handguns on the streets and in vehicles by persons who have no legitimate reason to carry them." [16] Senate Bill 205 (1972); House Bill 277 (1972). The cross-filed bills proposed a permitting scheme with a variety of exceptions for groups or individuals with a legitimate need to carry handguns. An exception to the general ban was made for those holding a permit to carry a weapon, as issued by the Superintendent of the Maryland State Police according to certain criteria set forth in the statute. Other exceptions pertained to on-duty law enforcement, military, or correctional personnel; various sporting activities; and those possessing handguns in their home or place of business.

As to the exception for residences and places of business, the bills as originally introduced provided: "Nothing in this section shall prevent a person from having in his presence any handgun within the confines of any dwelling, business establishment, or real estate owned or leased by him." Senate Bill 205 (1972), § 3 (first reader); House Bill 277 (1972), § 3 (first reader). This proviso was apparently added for purposes of self-defense.[17]

---

**16.** Letter from Governor Marvin Mandel to Delegate Donald B. Robertson (December 21, 1971).

**17.** Proponents of the handgun law related this exception to a recommendation of the 1969 "Statement on Firearms & Violence" issued by the National Commission on the Causes and Prevention of Violence, an entity established by a presidential executive order following the assassinations of Rev. Martin Luther King, Jr., and Senator Robert F. Kennedy. The Commission found that "[b]urglars and robbers ... threaten businesses, and firearms are frequently kept in places of

Some legislators, however, argued that the proposed exception for residences and businesses was inadequate in that it pertained only to the owner or lessor of the premises. Senator Newton I. Steers complained that "it was legal for anybody to have one, or indeed, 50 pistols in his dwelling or his place of business. However, nobody could pick up one of these pistols ... unless he was a building owner or tenant; thus, when the homeowner leaves his house or the store owner leaves his store, any guns in the building are immobilized." Statement on Gun Control, Senator Newton I. Steers, Jr. (February 25, 1972), *available in* Legislative Reference Bill File for Handgun Control Bill (the "Bill File") (1972).[18] Senator Steers proposed to amend the provision in several respects. One such amendment would have substituted the following: "Nothing in this section shall be deemed to prohibit the placing, wearing, carrying, or transporting of a handgun anywhere within the confines of any building by a person who is the owner, tenant or custodian thereof, or who obtains the permission of that owner, tenant or custodian." Proposed Amendment to Senate Bill 205. This amendment would have narrowed the area within which a handgun could be carried from dwellings, business establishments, and real estate to "buildings"; simultaneously, it would have expanded significantly the category of individuals who could carry a handgun within a building, leaving it to the owner or lessor's discretion.

business for protection. Such firearms are useful primarily against robbers, since burglars usually break and enter after the business has closed." National Commission on the Causes and Prevention of Violence, Commission Statement on Firearms & Violence (July 28, 1969) at 4. Therefore, because "firearms in business establishments may sometimes be effective in defending against robberies," *id.* at 3, the Commission recommended that handgun licenses be available to "small businesses in high crime areas" because of their "special need for self-protection," *id.* at 8.

18. It is typically difficult to locate legislative history in Maryland for bills enacted prior to 1976, when the Department of Legislative Reference began to systematically preserve bill files for each session. The Department did, however, compile a special bound volume of the bill files for the 1972 handgun legislation, which has been retained in the State Law Library.

Ultimately, a compromise was reached. An owner's or lessor's ability to carry a handgun without a permit on owned or leased real estate was retained. The owner's or lessor's ability to endow others with that right was limited to "supervisory employees" of a business and restricted to the "confines of the business establishment," but not real estate generally. The provision ultimately adopted by the General Assembly read:

Nothing in this section shall prevent a person from wearing, carrying, or transporting a handgun within the confines of real estate owned or leased by him or upon which he resides or within the confines of a business establishment owned or leased by him. Nothing in this section shall prevent a supervisory employee from wearing, carrying, or transporting a handgun within the confines of a business establishment in which he is employed during such time as he is acting in the course of his employment and has been authorized to wear, carry, or transport the handgun by the owner or manager of the business establishment.

Chapter 13, Laws of Maryland 1972 *then codified at* Maryland Code, Article 27, § 36B(c)(4).

Under the canons of statutory construction, "[w]hen a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions." Norman J. Singer and J.D. Shambie, *Sutherland Statutes and Statutory Construction* (2013), § 47:11 (internal footnote omitted). Thus, the supervisory employee exception should not be construed in a way that would defeat the purpose of the prohibition in the law. A contemporaneous interpretation by the Attorney General of this exception construed it narrowly and concluded that a supervisory employee was not entitled to transport a handgun between the business establishment and the employee's home. *See* 57 *Opinions of the Attorney General* 502, 506 (1972). And this Court later confirmed that the purpose of the exception was for self-defense. *Montgomery County v. Atlantic Guns, Inc.,* 302 Md. 540, 545, 489 A.2d 1114 (1985) ("[t]he purpose of this section is to permit those who believe a handgun is

necessary to defend their lives or property at home or in their place of business to carry one on such premises").

In 2002, the law was recodified as part of the new Criminal Law Article with new language, but without substantive change, at its current codification. Chapter 26, Laws of Maryland 2002. As part of the recodification, the exception was split into two—one pertaining to owners and lessors (current CR § 4–203(b)(6)) and one pertaining to supervisory employees (current CR § 4–203(b)(7)).

*Consequences of Alternative Construction*

Mr. Blue argues that "logic and common sense" compel a different result, because if he "were trying to apprehend someone who had just committed a violent crime inside the building, and the suspect was able to escape to the outside," he would be "required to either drop his gun at the door before continuing the chase outside, risking his own personal safety, or allow the suspect to escape." [19] He asserts that, if there was a fight in Irving's parking lot, an interpretation that restricts the exception to the nightclub itself would require him "to leave his handgun inside the nightclub building before trying to intervene in the fight, or not intervene at all." These statements are undeniably correct, and, we believe, precisely the limitation the Legislature intended for a supervisory employee who is wearing, carrying, or transporting a handgun without a handgun permit.

As Judge Cole of this Court noted, "[i]t is clear that the 1972 handgun control legislation is designed to discourage and punish the possession of handguns on the streets and public ways." *State v. Crawford*, 308 Md. 683, 695, 521 A.2d 1193 (1987). The rationale was that "by controlling the number of handguns in public, and not permitting citizens to carry guns when there is time for alternative, safe action, the legislature

---

19. Under Mr. Blue's preferred construction of the statute, he would still be required to "drop his gun" if the disturbance he joined happened to spill over the perimeter of the parking lot. The "illogic" in either scenario would be avoided if the security guard has a permit for the handgun, as is required for licensed security guards under State law.

sought to 'preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.' " *Id.*

The supervisory exception in the handgun law was not meant to confer on a business the power to deputize a private citizen who lacks a handgun permit as a law enforcement officer. It was not designed to permit an employee to chase suspects into public areas in order to "apprehend" them, nor was the Legislature's aim to authorize private citizens to brandish a handgun and "intervene" in an altercation. Rather, the legislative history indicates that the purpose of allowing firearms *within the confines of business establishments* was to defend the business against robberies—*i.e.,* for self-defense. Once a robber has fled the building, there is no longer a need for the employee to defend himself or other employees or patrons. In these circumstances, the employee should contact the authorities and leave to them the task of catching a robbery suspect or breaking up a parking-lot melee.

Mr. Blue asserts that, because the owner required the club's security guards to have a weapon, his job necessitated that he carry a handgun on the parking lot to be "a deterrent to likely criminal elements" and to halt "illicit activities on the premises." To the extent that an individual employed as a private security guard believes that possession of a handgun is essential to carrying out his duties on the parking lot of his employer's business, that individual may apply for a handgun permit pursuant to Maryland Code, Public Safety Article, § 5–304. Indeed, if Mr. Blue had been certified under State law as a private security guard, he would have been required to obtain a handgun permit in order to be armed while performing that job. *See* COMAR 29.04.01.12D. Mr. Blue did not have a handgun permit and his right to carry a handgun was limited to the breadth of the supervisory employee exception.

*Application of Similar Exceptions in other Jurisdictions*

Similar exceptions in handgun laws of other states are likewise not given an expansive construction. *See generally* Annotation, *Scope and effect of exception, in statute forbidding carrying of weapons, as to person on his own premises*

*or at his place of business,* 57 A.L.R.3d 938 (1974, 2013 Supp.). Courts in a number of other jurisdictions have held that an exception to a ban on concealed weapons related to possession of the weapon in a home or business did not extend to outside areas adjacent to the home or business. *See, e.g., Marshall v. Walker,* 958 F.Supp. 359, 363–64 (N.D.Ill.1997) (defendant who was outside of an apartment building he owned was not within statutory exception that allowed gun owner to carry weapon "on his land or in his own abode or fixed place of business"); *Dickerson v. State,* 975 A.2d 791, 796 (Del.2009) (any right to carry handgun within home did not extend to defendant's property outside of home); *People v. Tolbert,* 253 A.D.2d 832, 680 N.Y.S.2d 96, 97 (1998) (exception for home or place of business did not cover outdoor area); *Dunbar v. State,* 162 Ind.App. 375, 319 N.E.2d 630, 632 (1974) (defendant not within exception that covered possession in "place of abode" when defendant was in an alley adjacent to residence); *State v. Davidson,* 217 N.W.2d 630, 631–32 (Iowa 1974) (defendant not within exception that covered possession "in his dwelling house . . . or other land possessed by him" when defendant was in a common hallway adjacent to his apartment); *Wilson v. State,* 418 S.W.2d 687, 688 (Tex.Crim.App.1967) (exception for a person's "own premises" did not extend to shared driveway of apartment building); *Sherrod v. State,* 484 So.2d 1279, 1281–82 (Fla.App.1986) (exception for a person "at his home" did not cover person in the parking lot of his apartment building).

## Conclusion

The supervisory employee exception to the handgun law allows such an employee to carry a handgun, with the employer's permission, within the enclosed premises of the business in which the employee works. As is evident from the statutory language and confirmed by the legislative history, the exception was not intended to include an unenclosed parking lot adjacent to a nightclub. When Mr. Blue left the "confines" of the nightclub and took his handgun into the parking lot, he was no longer within the exception set forth in CR § 4–

203(b)(7). The police had legal justification to arrest him for a violation of CR § 4–203(a).[20]  As a result, the officers could not be held liable for false arrest or a violation of Article 24 of the Maryland Declaration of Rights.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

GREENE and ADKINS, JJ., and BELL, C.J., dissent.

GREENE, J., dissenting, which ADKINS, J., and BELL, C.J. (ret.) join.

I dissent from the Majority's conclusion that the phrase "confines of the business establishment" in Md. Code (2002, 2012 Repl. Vol.), § 4–203(b)(7) of the Criminal Law Article, limits a supervisory employee's right to carry a handgun to the interior walls of a building.  That interpretation is too narrow.  This Court has stated:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature.... [T]o determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning.  We do so on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant.  When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent....  We have said that there is an ambiguity within a statute when there exist two or more reasonable alternative interpretations of the statute.  (Quotations omitted.)  (Citations omitted.)

*Walzer v. Osborne*, 395 Md. 563, 571–72, 911 A.2d 427, 431–32 (2006).  If the legislative intent cannot be determined from the mere words of the statute, we must resort to other means of establishing a statute's proper interpretation, including looking into the legislative history, as well as "comments and explanations regarding it by authoritative sources during the

---

**20.** We express no opinion on the wisdom of the police exercising their discretion to arrest Mr. Blue in these circumstances.

legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions." *Witte v. Azarian,* 369 Md. 518, 525–26, 801 A.2d 160, 165 (2002). Moreover, when interpreting a statute, "[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake v. State,* 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006).

## I. Plain Meaning

It is quite common, as the Majority did, to look to dictionary definitions in order to ascertain the meaning behind statutory language. *See Montgomery Cnty. v. Deibler,* 423 Md. 54, 67, 31 A.3d 191, 198 (2011). It is not often, however, that the Court explains why it consulted a particular dictionary. *See Harvey v. Marshall,* 389 Md. 243, 260 n. 11, 884 A.2d 1171, 1181 n. 11 (2005). But as this Court has explained, "[b]ecause we are attempting to ascertain the intent of the Legislature in choosing certain language at a point in time, resort to a dictionary, legal or otherwise, should logically include consultation of those editions (in addition to current editions) of dictionaries that were extant at the time of the pertinent legislative enactments." *Id.* (citing *Rossville Vending Mach. Corp. v. Comptroller of* Treasury, 97 Md.App. 305, 316–18, 629 A.2d 1283, 1289–90 (1993) ("It seems logical, at least in a linear way, that a popular dictionary of [the time in which a statute was enacted] would be an informative resource in attempting to arrive at a determination of what the . . . Legislature intended by the usage of [a term in the applicable statute].")).

To this end, consultation of several dictionaries in use at the time this Legislation was enacted in 1972 provided useful direction. Notably, "confine" was defined as "a limit, end or boundary," *Ballentine's Law Dictionary* 244 (3d ed. 1969), and as "a boundary or bounded region; border; limit," *Webster's New World Dictionary of the American Language* 307–08 (Encyclopedia ed. 1951). There was no mention of "walls" or "building" in either definition. Current dictionary editions

should also be consulted.[1]  One modern dictionary defined "confines" as "the limits of an area:  borders," and posed the example: "within the *confines* of one's county." *Websters II New College Dictionary* 242 (3d ed. 2005).  Because the plain meaning of "confines" does not require—and most of the time the definition does not even mention—walls or a building, it is reasonable to interpret "confines" to include the borders of a business, such as a parking lot or fenced-in area surrounding any building in which the business is operated.

The next logical inquiry is the plain meaning of "business establishment."  Again to reference dictionaries in use at the time the legislation was enacted, "establishment" has been defined as "[t]he place in which one is permanently fixed for residence or business;  . . . any office or place of business, with its fixtures," *Ballentine's Law Dictionary* 418 (3d ed. 1969), and "place of business and fixtures;  residence with grounds, furnishings, equipage, etc." *Black's Law Dictionary* 643 (4th ed. 1951).  More recently, "establishment" has been defined as "[a] place of business, including its possessions and employees." *Websters II New College* Dictionary 392 (3d ed. 2005).  Because it is unclear whether "establishment" includes the real estate a business sits on, resort to the use of the phrase in Maryland law provides further guidance.  Maryland's use of the phrase in its regulations of business signs is most enlightening.  There, "business establishments" include gas stations, restaurants with drive-in outdoor stalls, and campgrounds, all of which are establishments that are not limited to a single building with four walls.[2]  COMAR 11.04.10.04, .05, .07.

Based on the plain meaning of the term "within the confines of a business establishment," in the context of § 4–203(b)(7) of

---

**1.** The Majority cites *Webster's Ninth New Collegiate Dictionary* 1355 (1987), which defines "confines" as "something (as borders or walls) that encloses."

**2.** The Majority draws a distinction between enclosed business establishments and "open air" business establishments.  In doing so, the Majority reads into the statute its own limitation on the application of the supervisory employee exception.

the Criminal Law Article, reason supports the conclusion that an adjacent private parking lot is within the boundaries in which a supervisory employee may carry a handgun. Delving further into our precepts of statutory construction, consideration of the legislative purpose, legislation that was not adopted by the General Assembly, and the adverse consequences of any other construction are particularly helpful tools to elucidate this point.

## II. Legislative Intent

The Majority reads a limitation into the statute that does not exist, a conclusion that is strengthened by an inquiry into the legislative purpose behind Md. Code (1972, 1976 Repl. Vol.), Article 27, § 36B(c)(4) (now §§ 4–203(b)(6)–(7) of the Criminal Law Article). As the Majority articulates in its opinion, §§ 4–203(b)(6) and (b)(7) of the Criminal Law Article were initially codified as one provision under Art. 27, § 36B(c)(4) [3] It therefore follows to interpret (b)(7) in light of (b)(6). Art. 27, § 36B(c)(4) reads:

> Nothing in this section shall prevent a person from wearing, carrying, or transporting a handgun within the confines of real estate owned or leased by him or upon which he resides or within the confines of a business establishment owned or leased by him. Nothing in this section shall prevent a supervisory employee from wearing, carrying, or transporting a handgun within the confines of a business establishment in which he is employed during such time as he is acting in the course of his employment and has been authorized to wear, carry or transport the handgun by the owner or manager of the business establishment.

The General Assembly made clear that the purpose underlying the enactment of this regulatory scheme was to curb "the [high] number of violent crimes perpetrated in Maryland," a "substantial increase ... which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity." Art. 27,

---

3. Majority Op. at 695–96, 76 A.3d at 1137.

§ 36B (a). "To effectuate that policy, the Legislature generally made it unlawful for persons to wear, carry or transport handguns ... [but] also provide[d] certain limited exceptions to the prohibition." *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 142, 497 A.2d 1143, 1151 (1985). The supervisory employee exception, obviously, falls within the exception created "for ... *business protection if confined to the real estate owned or leased by the persons having the handguns." See Kelley,* 304 Md. at 143, 497 A.2d at 1152 (emphasis added).

The Majority cites *Montgomery Cnty. v. Atlantic Guns, Inc.,* 302 Md. 540, 489 A.2d 1114 (1985), to explain the legislative purpose. I agree that in *Atlantic Guns,* we said that "[t]he purpose of ... section [36B(c)(4), now §§ 4–203(b)(6)–(7) of the Criminal Law Article] is to permit those, who believe that a handgun is necessary to defend their lives or ... their place of business, to carry one on such premises.[4]" 302 Md. at 545, 489 A.2d at 1116. This exception, however, cannot be read reasonably to mean that "business premises" or "within the confines of the real estate owned" is limited only to the interior of buildings located on the premises.

Additionally, it is not unusual for this Court to consider legislation that was not adopted in order to confirm legislative intent. *See, e.g., Stearman v. State Farm Mut. Auto. Ins. Co.,* 381 Md. 436, 455–56, 849 A.2d 539, 551 (2004) (discussing the introduction of bills in the General Assembly that were not enacted during an analysis of legislative intent); *Deville v. State,* 383 Md. 217, 229, 858 A.2d 484, 491 (2004) (concluding that because a home detention statute was not adopted at the time, it was unlikely that the Legislature contemplated home detention when it used "place of confinement" in the relevant statute). Had the legislature intended for a supervisory em-

---

**4.** The generally-accepted definition of premises is "a house or building, along with its grounds." *Black's Law Dictionary* 1219 (8th ed. 2004); *see Giant Food, Inc. v. Dept. of Labor, Licensing, and Regulation,* 356 Md. 180, 192, 738 A.2d 856, 862 (1999) (defining premises as: "a. a tract of land including its buildings. b. a building together with its grounds or other appurtenances. c. the property forming the subject of a conveyance or bequest").

ployee's right to carry a handgun to stop at the entryway of a building, it would have and could have said so. In fact, Senator Newton I. Steers, Jr. proposed an amendment that would unambiguously mean just what the Majority holds is the correct interpretation of the present statute, yet this amendment failed before the Maryland Senate. The amendment read: "(4) Nothing in this section shall be deemed to prohibit the placing, wearing, carrying, or transporting of a handgun anywhere *within the confines of any building* by a person who is the owner, tenant or custodian thereof, or who obtains the permission of that owner, tenant, or custodian." Senator Steers, Amendment to Senate Bill 205 (emphasis added). The General Assembly chose not to adopt the language "of any building" in its final version of the statute, which would have made the Majority's reading of the statute persuasive; instead, it adopted the phrase "within the confines of a business establishment." [5]

Moreover, this Court has previously charged that in interpreting a statute we should "avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake*, 395 Md. at 224, 909 A.2d at 1026. The Majority erroneously dismisses Petitioner's "logic[al] and common sense" approach to the appropriate statutory interpretation. Petitioner poses the hypothetical that "if there was a fight in Irvin's parking lot, it would have been natural for [Petitioner] and other security to intervene," but that with the Majority's interpretation, "[Petitioner] would have been re-

---

5. Also included in the Bill File is an additional proposal by Senator Steers, which was likewise not adopted by the General Assembly. That amendment read: "Nothing in this section shall be deemed to prohibit the placing, wearing, carrying, or transporting of a handgun anywhere *within the confines of any building* by a person who is the owner ... or by a tenant *within that portion of the building* of which he is the tenant, or *by a person left in charge of part or all of a building by the owner or tenant,* in that portion of the building of which he is left in charge." (Emphasis added.) Again, Senator Steers advocated for the terms, "confines," to a "building" or "portion of a building" (much more narrow language than "confines of a business establishment") to be included in the statute. Senator Steers's more narrow language was not adopted.

quired to either drop his gun at the door before continuing ... outside, risking his own personal safety," or to not go outside at all. It does not follow that this outcome is "precisely the limitation the Legislature intended," as the Majority suggests. Ordinarily, "in seeking to ascertain legislative intent, [the Court] may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986). The General Assembly could not have intended for a security guard, hired for the purpose of protecting the business establishment, and given the intensive nature of his or her duties, to drop a loaded weapon at the door of the building before going out into the parking lot of the business to break up a fight or to inspect a disturbance occurring on the premises. Accordingly, I respectfully dissent.

Chief Judge BELL (ret.) and Judge ADKINS join in the views expressed in this dissenting opinion.