*Janice Hollabaugh v. MRO Corporation*, No. 27, September Term, 2024.

**CONFIDENTIALITY OF MEDICAL RECORDS ACT – STATUTORY STANDING – MOTION TO DISMISS**

The Confidentiality of Medical Records Act provides that a "health care provider or any other person who knowingly violates any provision" of the Act is "liable for actual damages." Although the petitioner and cross-respondent was not the party who made the request or paid the fee to the provider, she alleged in her complaint that she reimbursed her attorney in full for the payment made. At the motion to dismiss stage, the petitioner's allegations created a reasonable inference of facts sufficient to support her standing.

**CONFIDENTIALITY OF MEDICAL RECORDS ACT – STATUTORY INTERPRETATION – FEE FOR RETRIEVAL AND PREPARATION**

The Confidentiality of Medical Records Act seeks to protect the privacy of patients and maintain the confidentiality of medical records by establishing rules for health care providers' maintenance and disclosure of those records. As part of that statutory scheme, the Act establishes that the providers may charge a reasonable cost-based fee to certain persons for copying and providing information requested, and it authorizes and caps certain types of fees, including "a preparation fee not to exceed $22.88 for medical record retrieval and preparation." The plain meaning and statutory context of that provision confirm that health care providers may not charge a preparation fee for a search that does not result in copying and providing the information requested.

Circuit Court for Baltimore County
Case No. C-03-CV-22-003166
Argued: April 7, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 27

September Term, 2024

_____

JANICE HOLLABAUGH

v.

MRO CORPORATION

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: July 10, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The General Assembly enacted the Confidentiality of Medical Records Act, Md. Code Ann., Health-Gen. §§ 4-301 – 4-310 (2023 Repl.; 2024 Supp.), to protect the privacy of patients and maintain the confidentiality of medical records by establishing rules for the maintenance and disclosure of those records. As part of that scheme, the Confidentiality Act establishes a right of access for certain persons who request in writing to see, receive, or copy records. The Act permits health care providers to charge limited fees to certain persons for copying and providing the information requested, one of which is a "preparation fee" not to exceed $22.88 for medical record "retrieval and preparation." At issue here is whether a health care provider may charge that fee for conducting a search that does not lead to the production of any medical records. We hold that the Confidentiality Act does not permit a fee in that circumstance.

## BACKGROUND

### A.     Factual Background[1]

In February 2020, Janice Hollabaugh, the petitioner and cross-respondent, authorized her attorney to request her medical records from a health care provider for use in pursuing personal injury claims. That provider contracted with MRO Corporation, the respondent and cross-petitioner, to fulfill the request. MRO then sent Ms. Hollabaugh's attorney a document titled "Cancellation Invoice." The ambiguously written document

---

[1] Because Ms. Hollabaugh appeals the circuit court's grant of a motion to dismiss, we "assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them[.]" *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 643 (2010).

states: "Your request for Medical Records has been cancelled. The medical facility has completed the search and retrieval of the requested records. This invoice is for the Search/Retrieval Fee if applicable in your state." It is unclear why MRO identified the request as being canceled, but it is plain from the allegations in the complaint that the request was canceled by MRO and not by Ms. Hollabaugh or her attorney.

Although MRO did not produce any records, it charged Ms. Hollabaugh's counsel a fee of $22.88 "for searching for her Medical Records." Ms. Hollabaugh's attorney paid the fee, and she reimbursed him in full.

### B.    Procedural History

In August 2022, Ms. Hollabaugh filed a putative class action lawsuit in the Circuit Court for Baltimore County. Count I of the first amended complaint alleges that the fee MRO charged for searching for her medical records violates § 4-304(c) of the Health-General Article, which is the provision of the Confidentiality Act authorizing, among other things, the $22.88 fee for record "retrieval and preparation."[2] She seeks damages equal to the alleged overpayment.

After an unsuccessful attempt to remove the case to federal court, MRO moved to dismiss, arguing among other things that § 4-304(c) authorizes a fee for records searches that do not result in the production of records, and that Ms. Hollabaugh lacks standing to

---

[2] The complaint also alleges violations of the Maryland Consumer Protection Act and the Maryland Consumer Debt Collection Act, and requests a declaratory judgment and "money had and received," in addition to actual damages. Those claims are not at issue in this appeal.

sue because her attorney, not Ms. Hollabaugh herself, made the records request and paid the fee. The circuit court determined that Ms. Hollabaugh had standing but concluded that § 4-304(c) authorized MRO's fee. The circuit court thus granted MRO's motion to dismiss.

The Appellate Court of Maryland affirmed on both issues. *Hollabaugh v. MRO Corp.*, No. 1049, Sept. Term, 2023, 2024 WL 2858350, at *1 (Md. App. June 6, 2024). The court held that Ms. Hollabaugh had standing, *id.* at *3-4, but it determined that § 4-304(c) authorized MRO's search fee, *id.* at *10. Although the court concluded that both parties proposed facially reasonable interpretations of the statute, it determined that Ms. Hollabaugh's reading was inconsistent with the statute's stated "purpose" to permit providers to charge a "reasonable cost-based fee" for record retrieval and preparation. *Id.* at *5-10.

We granted Ms. Hollabaugh's petition for a writ of certiorari to decide whether the Confidentiality Act authorizes MRO's search fee, and we granted MRO's cross-petition on the issue of whether Ms. Hollabaugh has standing to raise that claim.

**STANDARD OF REVIEW**

This Court reviews without deference the grant of a motion to dismiss for failure to state a claim. *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 178 (2022). In its review, the Court "must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them[.]" *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 643 (2010).

3

**DISCUSSION**

## I.    STATUTORY BACKGROUND

The Confidentiality Act seeks to protect the privacy of patients and ensure the accuracy and confidentiality of medical records by establishing "clear and certain rules" for health care providers' maintenance and disclosure of records. *See* 1990 Md. Laws, Ch. 480 (preamble). The Act's preamble identifies the policy concerns underlying it, including the significant emotional and financial harm that may result from improper use or disclosure of records and patients' need to access records so as "to make informed decisions concerning their health care" or to correct inaccurate or incomplete information about themselves. *See id.* The Act regulates a wide swath of conduct related to the maintenance and disclosure of medical records, including confidentiality requirements (Health-Gen. §§ 4-302, 4-307); permitted, mandatory, and good faith disclosure (*id.* §§ 4-305, 4-306, 4-308); authorization for disclosure (*id.* § 4-303); operations related to the State-designated health information exchange (*id.* § 4-302.3); the establishment of a Protected Health Care Commission (*id.* § 4-310); and, as most relevant here, fees that may be charged for accessing records (*id.* § 4-304(c)).

Section 4-304 of the Confidentiality Act governs medical records requests. Section 4-304(a) establishes a right of access to certain medical records for "person[s] in interest," which includes, among other people, an "adult on whom a health care provider maintains a medical record" and "an attorney appointed in writing" by such an adult, *id.* § 4-301(n)(1), (6). With some exceptions, a health care provider is required to comply

4

with a request from a person in interest to receive a copy of a medical record.[3] *Id.* § 4-304(a)(1)(i)-(ii).

Section 4-304(c) regulates the fees a provider may charge for complying with such a request. Pursuant to subsection (c)(2), a private provider may require a person in interest "to pay for the cost of copying . . . a reasonable cost-based fee for providing the information requested." *Id.* § 4-304(c)(2)(ii). Subsection (c)(3) then identifies the specific types and amounts of fees a provider may charge a person in interest "for a copy of a medical record[,]" separately addressing hard copy and electronic records. *Id.* § 4-304(c)(3)(i). For hard copy records, subsections (c)(3)(i) and (ii) authorize three fees: (1) "a fee for copying and mailing not exceeding 76 cents for each page of the medical record"; (2) "a preparation fee not to exceed $22.88 for medical record retrieval and preparation"; and (3) "[t]he actual cost for postage and handling of the medical record[.]"[4] For electronic records, subsection (c)(3)(iii) similarly authorizes three fees: (1) "[a] preparation fee not to exceed $22.88 for electronic format medical records retrieval and preparation;" (2) "[a] per-page fee of 75% of the per-page fee charged [for hard copy records] that may not exceed $80;" and (3) "[t]he

---

[3] Section 4-304(b) requires providers to "establish procedures for a person in interest to request an addition to or correction of a medical record," and requires providers, within a reasonable time, to make the requested change(s) or provide a detailed written notice of refusal to the person in interest, among other things. Health-Gen. § 4-304(b).

[4] It is not readily apparent how the "mailing" portion of the 76-cent per-page fee for "copying and mailing" and the separate fee for the "actual cost for postage and handling" interact.

actual cost for postage and handling[.]"[5]  At issue here is the $22.88 "preparation fee" for "medical records retrieval and preparation," which is identical for hard copy and electronic medical records.[6]

---

[5] The full text of subsection (c)(3) is:

(3)(i) Except as provided in subparagraph (iii) of this paragraph, for a copy of a medical record requested by a person in interest or any other authorized person under paragraph (2)(ii) of this subsection, a health care provider may charge a fee for copying and mailing not exceeding 76 cents for each page of the medical record.

> (ii) In addition to the fee charged under subparagraph (i) of this paragraph, a hospital or a health care provider may charge:
>
>> 1. Subject to the fee limitations that apply to persons in interest under 45 C.F.R. 164.524 and any guidance on those limitations issued by the U.S. Department of Health and Human Services, a preparation fee not to exceed $22.88 for medical record retrieval and preparation; and
>>
>> 2. The actual cost for postage and handling of the medical record.
>
> (iii) Subject to the fee limitations that apply to persons in interest under 45 C.F.R. 164.524 and any guidance on those limitations issued by the U.S. Department of Health and Human Services, a hospital or a health care provider that uses or maintains the requested medical records in an electronic format may charge for an electronic copy of a medical record in an electronic format requested by a person in interest or any other authorized person:
>
>> 1. A preparation fee not to exceed $22.88 for electronic format medical records retrieval and preparation;
>>
>> 2. A per-page fee of 75% of the per-page fee charged by a health care provider under subparagraph (i) of this paragraph that may not exceed $80; and
>>
>> 3. The actual cost for postage and handling of the electronic format medical records.

Health-Gen. § 4-304(c)(3).

[6] Section 4-304(c)(4) allows the fees authorized under (c)(3) to be "adjusted annually for inflation in accordance with the Consumer Price Index," except for the fee for

## II.     STANDING

We begin with MRO's contention that Ms. Hollabaugh lacks standing to bring her claim because her attorney, rather than Ms. Hollabaugh herself, requested her records and paid MRO's fee.  "A litigant must have standing to maintain a judicial action." *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 432 Md. 292, 313 (2013).  "Standing, in its most conventional sense, refers primarily to *who* may 'invoke the judicial process in a particular instance.'" *In re Jacobson*, 256 Md. App. 369, 393-94 (2022) (quoting *State Ctr., LLC v. Lexington Charles P'ship*, 438 Md. 451, 502 (2014)).  A plaintiff's standing "may be grounded on a statute conferring a legal interest or privilege." *Long Green Valley Ass'n*, 432 Md. at 313.

Ms. Hollabaugh's claim is grounded in the Confidentiality Act, which regulates the fees health care providers may charge persons in interest to comply with medical records requests, Health-Gen. § 4-304(c), and provides, in § 4-309(f), that "[a] health care provider or any other person who knowingly violates any provision" of the Confidentiality Act is

---

"retrieval and preparation" of a medical record in hard copy or electronic format under (c)(3)(ii) and (iii).   Health-Gen.  § 4-304(c)(4)(i)-(ii).   The remaining provisions in subsection (c) further adjust, limit, or prohibit fees in specific circumstances.  *See id.* § 4-304(c)(5) (prohibiting fees when the request is made for the purpose of filing or appealing certain Social Security claims), (6) (prohibiting fees when the request is made by a government unit or agency or court-appointed guardian ad litem in criminal or juvenile delinquency proceedings), (7) (prohibiting a fee greater than $20 per 100 pages for individuals enrolled in the Maryland Medical Assistance Program), (8) (prohibiting persons or entities not subject to the subsection and who obtain medical records from charging a fee greater than those listed in (c)(3)(i)).  Subsection (c)(5) was added to § 4-304 in 2021.   2021 Md. Laws, Ch. 157.   The law is otherwise unchanged from when Ms. Hollabaugh's attorney requested her records.

"liable for actual damages." The question, then, is "whether the statute contemplates litigants like [Ms. Hollabaugh] availing themselves of its remedies[.]" *Suessmann v. Lamone*, 383 Md. 697, 712 (2004); *see also Kendall v. Howard County*, 431 Md. 590, 604 (2013) (noting that for purposes of standing "a plaintiff must satisfy the court that 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question'" (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970))).

Section 4-309(f) authorizes a cause of action by someone injured by a knowing violation of the Confidentiality Act to recover actual damages. Because neither § 4-309(f) nor any other provision of the statute identifies or limits those who may be able to bring such an action, we look to common law standing principles for guidance. "Under Maryland common law, standing to bring a judicial action generally depends on whether one is 'aggrieved,' which means whether a plaintiff has 'an interest "such that [the plaintiff] is personally and specifically affected in a way different from . . . the public generally."'" *Jones v. Prince George's County*, 378 Md. 98, 118 (2003) (quoting *Sugarloaf v. Dep't of Env't*, 344 Md. 271, 288 (1996)).

Ms. Hollabaugh's first amended complaint alleges that she authorized her attorney to request the records, and when he paid the fee MRO charged, she reimbursed him in full. A reasonable inference from that allegation is that she was required to reimburse him for the fee. Because the parties apparently did not engage in discovery relative to standing before the circuit court dismissed the complaint, we are left at this stage of the proceedings

8

with the factual allegations in the complaint and "all inferences that may reasonably be drawn from them" viewed in the light most favorable to Ms. Hollabaugh. *RRC Northeast*, 413 Md. at 643; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that the plaintiff has the burden of establishing standing "with the manner and degree of evidence required at the successive stages of the litigation"); *id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))). Viewed in that light and at this stage, her allegations are sufficient. We therefore agree with the Appellate Court that the circuit court did not err in rejecting MRO's standing defense at the motion to dismiss stage.

## III. THE "PREPARATION FEE" FOR "MEDICAL RECORDS RETRIEVAL AND PREPARATION"

We turn next to whether Ms. Hollabaugh has stated a claim against MRO for violation of § 4-304(c) of the Health-General Article.[7] Ms. Hollabaugh alleges that MRO charged her for searching for her medical records without producing any such records. A reasonable inference from that allegation is that MRO searched for medical records relating to Ms. Hollabaugh and did not find any. Ms. Hollabaugh contends that § 4-304(c) does

---

[7] As a preliminary matter, the parties do not dispute that for the purposes of this appeal, MRO falls into the definition of a "[h]ealth care provider" under the Confidentiality Act because it was acting as an agent for Ms. Hollabaugh's health care provider. *See* Health-Gen. § 4-301(h)(1)-(2).

9

not permit a health care provider to charge for an unsuccessful records search. Resolving that issue requires us to resort to our familiar principles of statutory interpretation.

"The goal of statutory construction is to discern and carry out the intent of the Legislature." *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024) (quoting *Blue v. Prince George's County*, 434 Md. 681, 689 (2013)). "Our search for legislative intent begins with the text of the provision we are interpreting, viewed not in isolation but 'within the context of the statutory scheme to which it belongs.'" *Id.* (quoting *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169 (2021)). "Our review of the text is wholistic, seeking to give effect to all of what the General Assembly included and not to add anything that the General Assembly omitted. In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it[.]" *Id.*

"When statutory terms are undefined, we often look to dictionary definitions as a starting point, to identify the 'ordinary and popular meaning' of the terms, before broadening our analysis to consider the other language of the provisions in which the terms appear and the statutory scheme as a whole[.]" *Id.* (quoting *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 390 (2022)). "Presuming the General Assembly 'intends its enactments to operate together as a consistent and harmonious body of law,' we also 'seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.'" *Id.* at 644-45 (quoting *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021)). If, after exhausting the tools available for our textual analysis, we conclude a statute is unambiguous, "our inquiry generally ceases at that point

10

and we apply the statute as written." *Id.* at 645 (quoting *Williams v. Morgan State Univ.*, 484 Md. 534, 546 (2023)). In cases where "the text is ambiguous—or if we seek to confirm or check our plain language interpretation—we look to other indicia of legislative intent, including legislative history." *Comptroller v. Badlia Bros., LLC*, 490 Md. 163, 170 (2025).

One purpose of the Confidentiality Act is to ensure that patients can access their medical records. *See* 1990 Md. Laws, Ch. 480 (preamble). In furthering that purpose, the Act requires health care providers to create a framework for fulfilling records requests and maintaining the confidentiality of medical records throughout the request process. The Act requires providers to comply with requests for records and generally allows them to charge fees for doing so. The fee provisions of § 4-304(c)(3) are thus one component of a broader statutory scheme that provides the context for our analysis. It is therefore notable that the provisions of § 4-304 and related code provisions uniformly presuppose the existence of records. Indeed, that presupposition applies even to the definition of "person in interest," which includes "[a]n adult on whom a health care provider maintains a medical record[.]" Health-Gen. § 4-301(n)(1).

The same is true throughout § 4-304. That section requires health care providers to comply with written requests for records from persons in interest (subsection (a)) and to establish procedures for such persons to make additions or corrections to their records (subsection (b)). *Id.* § 4-304(a)-(b). It also regulates the fees that providers may charge for "copying" and "providing" records (subsection (c)) and generally permits providers to "withhold copying until the fee for copying is paid," with some exceptions (subsection (d)).

11

*Id.* § 4-304(c)-(d). Every aspect of § 4-304 contemplates the existence of medical records maintained by the provider from whom they are requested.

That applies as well to § 4-304(c)(2), which states in relevant part that "[a] health care provider may require a person in interest or any other authorized person . . . to pay for the cost of copying . . . a reasonable cost-based fee for providing the information requested." Although there is only one fee permitted by subsection (c)(2), there are two statements regarding what it may be charged for: (1) "the cost of copying"; and (2) "providing the information requested," i.e., medical records. While copying and providing records are not necessarily the same thing, both presuppose the existence of medical records. Non-existent records can be neither copied nor provided.

Subsection (c)(3) then identifies the "reasonable cost-based fee[s]" that may be charged. *Id.* § 4-304(c)(3). Each category of those authorized fees presupposes the existence of medical records: (1) a per-page fee for "copying and mailing" hard copy records and a lesser such fee for electronic records; (2) the "actual cost for postage and handling" of records in both formats; and (3) the "preparation fee" for "retrieval and preparation" of records in both formats. *Id.* § 4-304(c)(3). Non-existent records cannot be copied, mailed, handled, retrieved, or prepared, nor can they have postage affixed to them.

The logical prerequisite for a "reasonable cost-based fee" for "copying and mailing" and the "actual cost for postage and handling" is the existence of a medical record responsive to the request that may be copied and provided to the requester. The fee for "retrieval and preparation" shares that prerequisite. Although neither word is defined by

12

the Confidentiality Act, the ordinary meanings of those terms imply the existence of something that may be both retrieved and prepared. Dictionary definitions can provide a helpful starting point for understanding the plain meaning of statutory text. *Westminster Mgmt.*, 486 Md. at 644. *Merriam-Webster's Collegiate Dictionary*, for example, defines "retrieval" as "the act or process of retrieving." *Retrieval*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014). And the *New Oxford American Dictionary* defines it as "the process of getting something back from somewhere" or "the obtaining or consulting of material stored in a computer system." *Retrieval*, New Oxford American Dictionary (3d ed. 2010). Similarly, *Merriam-Webster* defines "preparation" as "the action or process of making something ready for use or service[.]" *Preparation*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014); *see also Preparation*, New Oxford American Dictionary (3d ed. 2010) ("an action or process of making ready or being made ready for use or consideration").

The ordinary meanings of both "retrieval" and "preparation" thus imply that there is *something* capable of being obtained and made ready for use. Here, the very thing to be retrieved and prepared was absent. And even if either of those terms alone could be understood to apply to an action in the absence of a medical record, the Act authorizes a fee only for "retrieval *and* preparation" of a medical record. Health-Gen § 4-304(c)(3)(ii)

13

(emphasis added). While the use of "and" is not dispositive,[8] its most natural meaning in this context is conjunctive. Here, MRO performed neither retrieval nor preparation but charged a fee that is authorized only for performing both.

Finally, viewed as a whole, the components of subsection (c)(3) collectively describe—and authorize charging fees for—many steps in the process of fulfilling a request related to an existing medical record: retrieval, preparation, copying, handling, and mailing. All are necessary parts of "providing the information requested." *See id.* § 4-304(c)(2)(ii). Absent from that list is a records search, which is a necessary antecedent to the referenced steps. That absence is significant. Where the General Assembly has specifically authorized fees for particular tasks related to providing medical records, we will not assume that it intended to authorize a fee for an additional task not mentioned in the statute.

Given the plain language meaning of "retrieval" and "preparation" and the statutory context in which those terms appear, we conclude that the Confidentiality Act's authorization of "a preparation fee not to exceed $22.88 for medical record retrieval and preparation" allows that fee to be charged only when the health care provider actually

---

[8] *See SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 643 (2018) ("'[A]nd' and 'or' may be used interchangeably when it is reasonable and logical to do so." (quoting *Little Store, Inc. v. State*, 295 Md. 158, 163 (1983))).

14

retrieves and prepares records. It does not permit providers to charge such a fee for an unsuccessful records search alone.[9]

MRO's additional arguments are unpersuasive. MRO contends that it can charge for a search that does not result in a retrieval because searching for records is a necessary, component part of "retrieval." In doing so, MRO emphasizes that the General Assembly used the noun form "retrieval," rather than the verb form "retrieve," and that the fee is authorized "for" retrieval, suggesting it covers actions "going towards" retrieval. MRO argues that that reflects an intent to capture the process of retrieving, which necessarily involves a search and which need not necessarily be successful.

We disagree for two reasons. First, although we agree that a search for medical records is a necessary antecedent to retrieving those records, that does not necessarily make it a component of that retrieval. Retrieval is a similarly necessary antecedent to preparation of records, but they are separate steps, as are handling and mailing. Moreover, even if we were to view a search as an integral component of the process of retrieving a record—

---

[9] Because we do not find the statute ambiguous when considered in context, we need not consult legislative history. But it too is supportive of Ms. Hollabaugh's interpretation. The parties argue primarily about the relevance of the 1994 amendments to the Confidentiality Act, which added the first iteration of subsection (c)(3)(ii). *See* 1994 Md. Laws, Ch. 585. As originally proposed, that provision would have permitted providers to "charge a fee not exceeding $13, including postage and handling, for a medical record *search*." Bill File for H.B. 716 at 81-87 (1994) (emphasis added). The General Assembly ultimately replaced that language with the current two-pronged text in (c)(3)(ii), including a then-$15 "preparation fee . . . for retrieval and preparation." 1994 Md. Laws, Ch. 585. Neither the 1994 amendments nor any other history identified by the parties suggest that a fee for searching, separate and apart from production, was ever contemplated under the Act.

rather than as a separate, antecedent step to retrieval—that still would not make a search alone sufficient to constitute the retrieval of a medical record. Viewed in that light, a provider who engages in an unsuccessful search for records engages in part of the process of records retrieval but not in the retrieval of records. In other words, even if a search were a component part of the process of "retrieval and preparation," it does not alone constitute either retrieval or preparation, much less both. We see nothing in the statutory scheme to suggest that by authorizing a fee for "retrieval and preparation" of medical records, the General Assembly intended to authorize providers to charge that fee for unsuccessful searches for such records. Indeed, the opposite conclusion is more consistent with our ordinary principles of statutory interpretation. *See Westminster Mgmt.*, 486 Md. at 644 ("In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it[.]").

Second, "retrieve" does not have a meaningfully different interpretation than "retrieval" for these purposes. Retrieve is defined as "get or bring (something) back" or "regain possession of," *Retrieve*, New Oxford American Dictionary (3d ed. 2010), and, most relevantly, "to get back again" or "to return . . . successfully," *Retrieve*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014). Those definitions also require that there is a something that exists, as well as the ultimate acquisition of that something. We do not typically conceive of nouns that describe their verb form as encompassing only a subpart of the action or process they describe. Take, for example, "arrive" and "arrival." An individual's arrival at an event may involve the drive to the venue. But if the individual

16

started driving and ultimately turned around, never to reach the event, we would not ordinarily describe that journey as an "arrival." It would, instead, be a non-arrival, just as MRO's apparently unsuccessful search resulted in a non-retrieval of medical records. That analysis applies with even greater force to the statute's use of the term "preparation," which necessarily must involve the preparation of something.[10]

MRO also argues that our interpretation of § 4-304(c) creates an illogical result because there is no rational reason to permit a provider to recover its response costs when records are found, but not permit any recovery of such costs when records are not found. But the entire statutory scheme, including its interaction with federal law, appears to balance the interests of requesting parties (ensuring reasonable access to their records) and the interests of health care providers (permitting compensation at reasonable rates for at least some actions taken to provide that access). Thus, in spite of the general authorization to charge reasonable fees for providing copies of records, § 4-304(c)(5) prohibits a health

---

[10] If the General Assembly intended to authorize fees for searching, it certainly knew how to do so. We have thus far discussed the fee provisions of the Confidentiality Act as applied to private health care providers, such as MRO. As applicable to State facilities regulated by the Maryland Department of Health, the Confidentiality Act, in Health-General § 4-304(c)(2)(i), incorporates by reference the fee provision of Maryland's Public Information Act, § 4-206 of the General Provisions Article. Section 4-206 permits the State to charge "a reasonable fee" for certain services related to records requests, defined as "a fee bearing a reasonable relationship to the recovery of actual costs incurred by a governmental unit." Md. Code Ann., Gen. Provisions § 4-206(a)(3), (b)(1) (2019 Repl.). Most relevant here is that § 4-206(b) permits the State to charge a fee for reasonable and actual costs of "*the search for*, preparation of, and reproduction of" a record, although only after "the first 2 hours that are needed to search for a public record and prepare it for inspection." *Id.* § 4-206(b)(1)(i), (ii) (emphasis added).

17

care provider from charging any fee for providing records requested by certain people for "the purpose of filing a claim regarding or appealing a denial of Social Security disability income or Social Security benefits[.]" And § 4-304(c)(4) permits most authorized fees to be adjusted annually for inflation but exempts the "preparation fee" for "retrieval and preparation." It is equally plausible that, in balancing interests, the General Assembly thought it would be reasonable to allow providers to charge fees only when they actually provide medical records.

It is also notable that the federal government expressly limits search fees while allowing other fees in connection with fulfilling certain records requests. 45 C.F.R. § 164.524 limits fees that entities covered by the regulation may charge for requests for protected health information, such as medical records, when "made by the patient for use by the patient." *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 38 (D.D.C. 2020). Section 164.524, commonly referred to as the "Privacy Rule," is the federal analogue of § 4-304 of Maryland's Confidentiality Act, and the preparation fee provisions in § 4-304(c)(3) are expressly made subject to it. *See* Health-Gen. § 4-304(c)(3)(ii)-(iii). Although the federal regulation generally authorizes covered entities to "impose a reasonable, cost-based fee," including labor for copying, supplies, and postage, the Department of Health and Human Services has explained that such a fee does not include labor costs associated with "reviewing the request for access" or "[s]earching for, retrieving, and otherwise preparing the responsive information" when the request is made by the patient for the patient's use. *See Individuals' Right under HIPAA to Access their Health Information 45 CFR § 164.524*,

18

U.S. Dep't of Health & Hum. Servs. (last reviewed May 30, 2025), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html; *see also Ciox Health*, 435 F. Supp. 3d at 60, 66-68 (upholding the Department's 2016 guidance on the meaning of "labor for copying" as an interpretive rule under the Administrative Procedure Act). The federal government, engaged in its own balancing of interests, has thus drawn a different line concerning what fees may be charged for records falling within the scope of that regulation.

In sum, the General Assembly has made decisions concerning when providers may charge fees, what those fees may be charged for, and the amount of those fees for complying with obligations to provide medical records. That it has drawn lines in places MRO might not agree with does not make those lines illogical.[11]

For the same reason, we do not agree with the rationale in the thoughtful opinion of our Appellate Court colleagues. As that court noted, one purpose of the Confidentiality

---

[11] MRO also argues that Ms. Hollabaugh's position leads to absurdity in another way. According to MRO, if Ms. Hollabaugh is right that fees for a search are not included in the "preparation fee" that the statute caps at $22.88, then it means they are not covered— and so not restricted—by the statute at all. As a result, MRO argues, providers could charge any fee they desire for a mere records search, reasonable or not. Again, we disagree. The Confidentiality Act's fee provisions are plainly intended to authorize and cap all fees that may be charged in connection with the request for and provision of medical records. In connection with the obligation that health care providers must comply with written requests for records under § 4-304(a), a provider cannot charge persons in interest or other authorized persons fees outside of those expressly authorized under § 4-304(c)(3). MRO may no more charge unlimited rates to search for medical records because search charges are not expressly authorized by the statute than it could for opening an envelope containing a medical records request and reviewing the request—both antecedent tasks to conducting a search—if search fees were expressly authorized by the statute.

19

Act is to permit health care providers to recover "a reasonable cost-based fee[.]" But: (1) that fee is authorized for "providing" and "copying" medical records, not for any and all effort providers may expend in responding to a request; (2) the components of that fee are expressly set forth in the statute and do not include searches not accompanied by "retrieval and preparation"; and (3) permitting a reasonable cost-based fee is not a comprehensive statement of the purposes of the Confidentiality Act's fee provisions. An additional purpose reflected in § 4-304 is to minimize the fees for which those requesting information might be liable. The General Assembly's balancing of those interests is not something for this Court to disturb.

To be sure, MRO makes policy-based arguments in favor of allowing providers to charge fees for unsuccessful searches that may be sound. A provider certainly expends at least some uncompensated effort in conducting a search. And a no-records response may provide information that is valuable for the requester, even if it is not the information requested. MRO also suggests that if providers cannot charge for unsuccessful searches, they will be inundated with meritless requests and overwhelmed by the cost of complying with those requests, a contention we are not in a position to assess on this record. Regardless, such policy-based arguments are for the General Assembly, not this Court.

## CONCLUSION

In sum, we hold that: (1) at the motion to dismiss stage, the allegations of Ms. Hollabaugh's operative complaint were adequate to support the circuit court's conclusion that she has standing to pursue the claim before us; and (2) § 4-304(c) of the

20

Health-General Article does not allow a health care provider to charge a preparation fee for a medical records search that does not result in any records being retrieved and prepared to be provided to the requesting party.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED IN PART AND REVERSED IN PART, WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY RESPONDENT / CROSS-PETITIONER.**
